Hon. Richard A. Jones

1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

8    TREEHOUSE AVATAR LLC,

9                                                    Civil Action No. 2:17-cv-01860-RAJ
             Plaintiff,
10                                                   JOINT CLAIM CONSTRUCTION
             v.                                      BRIEFING
11
     VALVE CORPORATION,                              JURY TRIAL REQUESTED
12
             Defendant.
13

14        Plaintiff Treehouse Avatar LLC ("Treehouse") and defendant Valve Corporation

15   ("Valve") submit the following joint claim construction briefing, in accordance with the Court's

16   minute order of August 2, 2018. This consolidated submission is intended to replace prior claim

17   construction briefing filed in Delaware, compiling excerpts of issues that remain in dispute and

18   removing argument on terms no longer in contention. Each party also provides brief introductory

19   and background matter in the following section, excerpted from the prior briefs.

20                                 I.       INTRODUCTIONS

21        *1.   Treehouse's Introduction (from Dkt. #58, at p. 1-4, and Dkt. #66, p. 1)*

22        Plaintiff Treehouse Avatar LLC ("Treehouse") respectfully submits this Opening Claim

23   Construction Brief. Treehouse originally proposed four claim terms in U.S. Patent No. 8,180,858

24
     JOINT CLAIM BRIEFING - 1
     Civil Action No. 2:17-cv-01860-RAJ
     61178565_1_Combined CC brief
     227942\00046\61178565.v1

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

(the "'858 patent") that require construction. Defendant originally proposed twenty-nine claim terms as requiring construction, including fifteen that are allegedly indefinite. Following the submission of contentions in accordance with the Local Patent Rules, certain terms are now agreed and ten terms remain in dispute for construction.

Treehouse's constructions are fully consistent with the ordinary meaning of these claim terms, the specification of the '858 patent, and where appropriate, extrinsic evidence. In contrast, defendant attempts to narrow the claims by reading in extraneous limitations from the specification or other claims, or simply out of nowhere. In doing so, defendant offers constructions that are contrary to the clear intrinsic record and that would confuse the jury. In addition, although the claims are written in simple English, defendant seeks to construe numerous terms like "said users" and "said character attributes" as indefinite.

The '858 patent generally relates to creating, modifying, storing, retrieving and presenting customized and customizable characters in computing environments such as video games. The patent is directed to real time monitoring of the aggregate behavior of multiple users on "character-enabled" network sites. These are specialized virtual reality environments such as those found in a video game. Specifically, the patent is directed to systems and methods of (i) monitoring the selections of multiple users in "character-enabled" network sites by presenting characters for customization in real time and associating the customized character to specific "character attributes;" (ii) navigating across character-enabled network sites along with the customized characters; (iii) operating character-enabled network sites that present customized characters and cross-link them to specific users; and (iv) analyzing the data gathered as users customize characters and move within and across character-enabled network sites. The patent

JOINT CLAIM BRIEFING - 2
Civil Action No. 2:17-cv-01860-RAJ
61178565_1_Combined CC brief
227942\00046\61178565.v1

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

addresses, inter alia, the technological problem of constantly customizing a network site such as a video game site to each user's unique preferences.

The invention requires at least a character enabled network site ("CE site") where the character is customized, including software presenting the customized character in real time. Users of the CE site may customize their characters by selecting and adding or changing attributes such as hairstyle, ethnicity, clothing, food/drinks to consume, vehicle to ride, accessories like a mobile phone, and background music. (Col. 9:18–37). The customization is effected through presenting characters and character attributes to users for selection. (Col. 9:21–33). These presentations are effected by providing character data and character attribute data to a user interface. (Col. 2:64-3:5). Character data may be used to display, for example, human-like characters that are part of a CE site. (Col. 8:15-19; *see also* 7:27-29). The character attribute data may be used to display, for example, weapons used by a character in the play of a game. (Col. 9:27–37).

The invention presents these selections in real time through an information network with the help of special software operating on user interface devices and network sites. (Col. 6:26-66). When the user selects character attributes to build his character, the invention associates the particular character to the particular attributes selected by the user, stores the customized character and attributes in a database, and updates related data. (Col. 9:60-10:9). When the user accesses the same or a different C-E site later, the system retrieves the stored character and presents it to the user in a customizable format for any further modification. (Col. 11:30-44). The software presents the character at a later time by loading the data defining the character, including the selected attributes, from the database into the user interface. Each time the user

JOINT CLAIM BRIEFING - 3
Civil Action No. 2:17-cv-01860-RAJ
61178565_1_Combined CC brief
227942\00046\61178565.v1

LOWE GRAHAM JONES℠

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

revisits the C-E site, the system uploads the character including the latest selected attributes thus customizing the site for the user. (Col. 3:10-18; 9:49-53; 11:30-47).

One of the aspects of monitoring the user choices includes recording the users' choices of characters and character attributes across multiple users. (Col. 12:34-48; 13:1-5). This provides data that the site proprietor may use to keep the C-E site fresh and interesting to its users and develop market research data concerning users' choices and preferences. (Col. 2:44-51; 11:60-12:6). The invention also provides communication links to allow individual users to communicate with each other and see the character attributes selected by them. (Col. 5:28-43).

Claim construction begins with the "ordinary and customary meaning" of the terms, which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp*., 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc). "[T]he ordinary meaning of a claim term is its meaning to the ordinary artisan after reading the entire patent." (*Id*. at 1321). To that end, the Court should look first and foremost to the language of the claims themselves as it provides "substantial guidance as to the meaning of particular claim terms." (*Id*. at 1314). "The context of the surrounding words of the claim also must be considered." (*Id*). Further, "[d]ifferences among claims can also be a useful guide." (*Id*. at 1314-15). "The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." (*Id*. at 1316) (internal citations omitted). Moreover, definiteness of a claim term must be evaluated from the perspective of a person of skill in the art at the time the patent was filed. *Nautilus, Inc. v. Biosig Instruments, Inc.,* 134 S. Ct. 2120, 2128 (2014) (claim term is not indefinite if a person skilled in the art can understand the meaning and scope of the term with "reasonable certainty").

JOINT CLAIM BRIEFING - 4
Civil Action No. 2:17-cv-01860-RAJ
61178565_1_Combined CC brief
227942\00046\61178565.v1

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

Defendant wants the Court to find eleven claim terms indefinite despite acknowledging that they contain "visible drafting errors" and notwithstanding that there is only one reasonably certain interpretation of the terms in the context of the specification. Defendant's indefiniteness arguments are either conclusory and misplaced or irrelevant and should be rejected.

For the six terms that defendant proposes constructions for, its proposed constructions are inconsistent with the specification, based in a vacuum disconnected with the clear intrinsic record, or import extraneous limitations relying on improper expert opinion. Defendant's attempt to create confusion where none exists is improper and should be rejected.

### 2. Valve's Introduction (from Dkt. #63 at p. 1 and Dkt. #69 at p. 1)

To narrow the issues in this case and dispense with flawed claims that never should have been asserted, Valve respectfully proposes that the claim terms or phrases of the '858 patent discussed in the sections that follow either be construed as proposed by Valve or found indefinite, as demonstrated herein.

The purpose of claim construction is to give claim terms the meaning understood by a person of ordinary skill in the art at the time of invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-14 (Fed. Cir. 2005) (*en banc*). "Properly viewed, the 'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the entire patent." *Id.* at 1321. The court may not rewrite unambiguous patent claim language. *Chef America, Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374-75 (Fed. Cir. 2004). Thus, "[t]he construction of claims is simply a way of elaborating the normally terse claim language in order to understand and explain, but not to change, the scope of the claims." *Terlep v. Brinkmann Corp.*, 418 F.3d 1379, 1382 (Fed. Cir. 2005) (citations omitted).

JOINT CLAIM BRIEFING - 5
Civil Action No. 2:17-cv-01860-RAJ
61178565_1_Combined CC brief
227942\00046\61178565.v1

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

1    Treehouse concedes that numerous terms among the claims in dispute include multiple

2    drafting errors, but tries to downplay the impact of those errors.  Because Valve has shown that

3    the necessary corrections are subject to reasonable debate by skilled artisans, binding authority

4    requires that the claims containing those undisputed errors must be held to be indefinite pursuant

5    to 35 U.S.C. § 112, ¶ 2.  The Federal Circuit has rejected requests by a patent owner to redraft

6    numerous flawed claims, just as Treehouse urges here.  For example, in *Rembrandt Data Techs.,*

7    *LP v. AOL, LLC*, the Court concluded that judicial "substantial redrafting" of claims is

8    inappropriate:

> [The patentee] requests this court to insert "transmitter section for" into
> the final element of claim 3, [and] contends that the addition merely corrects "an
> obvious administrative or typographical error not subject to reasonable debate."
>
> We have stated that "[t]his court, however, repeatedly and consistently has
> recognized that courts may not redraft claims, whether to make them operable or
> to sustain their validity."  [We have also] held that "[a] district court can correct a
> patent only if (1) the correction is not subject to reasonable debate based on
> consideration of the claim language and the specification and (2) the prosecution
> history does not suggest a different interpretation of the claims."
>
> * * *
>
> [The patentee] seeks to have this court substantively redraft its claims and
> has not demonstrated that a skilled artisan would have read its proposed language
> into the claim.  As the district court noted, the correction suggested by [the
> patentee] is "not minor, obvious, free from reasonable debate or evident from the
> prosecution history."  This court will not redraft [the patentee's] claim[s].  [The
> claims at issue] are invalid.

641 F.3d 1331, 1339-40 (Fed. Cir. 2011) (citations omitted); s*ee also Ultimax Cement Mfg.*

*Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d at 1352-53; *Novo Indus., L.P. v. Micro Molds Corp.*,

350 F.3d 1348, 1357 (Fed. Cir. 2003); *Chef Am. Inc.*, 358 F.3d at 1374.  The same result applies

here, for the same reasons.

JOINT CLAIM BRIEFING - 6
Civil Action No. 2:17-cv-01860-RAJ
61178565_1_Combined CC brief
227942\00046\61178565.v1

LOWE GRAHAM JONES ᴾᴸᴸᶜ

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

Valve recognizes this Court's familiarity with claim construction principles and includes additional citations to authorities where relevant in the sections that follow.

## II.  AGREED TERMS

The parties agree that the following three terms should be construed as follows because the proposed constructions are consistent with the specification of the '858 patent: "character-enabled network site," "tallying," and "said CE network site."

| Claim Term | Joint Proposed Construction |
|---|---|
| character-enabled network site | *a network location, other than a user device, operating under control of a site program to present a character, object, or scene to a user interface* |
| tallying | *counting or calculating a total* |
| said CE network site | *said CE network sites* |
| character data | *"character" within this limitation is to be interpreted (or not interpreted, and given it plain and ordinary meaning) in the same manner as "character" when used elsewhere in the claims* |
| character-attribute data | *"character attribute" within this limitation is to be interpreted (or not interpreted, and given its plain and ordinary meaning) in the same manner as "character attribute" when used elsewhere in the claims* |
| user choices…made while…navigating character-enabled network sites | *No construction necessary.* |
| linking/linked | *No construction necessary.* |
| character persona | *collection of attributes and actions ascribed to a character* |

JOINT CLAIM BRIEFING - 7
Civil Action No. 2:17-cv-01860-RAJ
61178565_1_Combined CC brief
227942\00046\61178565.v1

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

### III.    DISPUTED TERMS

The parties dispute the meaning of the following terms, as outlined below.

#### 1.   *Character (JCCPS[1] Term 1)*

##### a.   *Treehouse opening brief (Dkt. #58, p. 5)*

Treehouse's opening brief stated that "character" was agreed to be interpreted as "character, object, or scene." Dkt. #58, at p. 5 (table). In view of the subsequent infringement and noninfringement contentions, Treehouse contends no construction is necessary or appropriate.

##### b.   *Valve answering brief (Dkt. #63, pp. 11-12)*

| Phrase | Undisputed meaning |
|---|---|
| "character" | "character, object, or scene" |
| "character attribute" | "quality or characteristic inherent or ascribed to a character, object, or scene" |

The parties agree on the meaning of "character" and "character attribute," but Valve alone proposes that construction of these phrases is necessary.  Specifically, Valve contends that construction is necessary because the undisputed meaning of these terms in the context of the '858 patent is substantially broader than their ordinary meaning.  For example, ordinarily a

---

[1] "JCCPS" refers to the Joint Claim Chart and Prehearing Statement filed by the parties on June 28, 2018 (Dkt. #127).



"character" would be distinguished from an "object or scene." However, the parties agree, and the USPTO has confirmed, that in the unique context of the '858 patent the term "character" *includes* – and is not distinguished from – an "object or scene." *See* JA[2] A17 & A20, '858 patent, at 1:30-35 & 7:26-29; JA A377 & A380, PTAB Institution Decision, at 8 & 11 (citing the same express definitions from the '858 patent). Indeed, the foregoing undisputed meanings have been adopted as claim constructions by the Patent Trial and Appeal Board ("PTAB") in a now-concluded *Inter Partes Review* proceeding. JA A377 & A380, PTAB Institution Decision, at 8 & 11.

Because the '858 patent applicants explicitly defined the claim terms in the patent specification, such definitions control. *See, e.g.*, *Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1380 (Fed Cir. 2009) (citations omitted) ("Here, [the patentee] explicitly defined the term 'animal' in the [] patent: 'The term "animal" means any organism belonging to the kingdom Animalia.' … That definition controls. Thus, because it is undisputed that humans are members of the kingdom Animalia, it was error for the district court to limit the claim term 'animal' to exclude humans."). Therefore, adopting the foregoing undisputed meanings as constructions would be helpful to the fact-finder in this case.

> ### c.   *Treehouse reply brief (Dkt. #66)*

Not addressed further.

---

[2] "JA" refers to the Joint Appendix for Claim Construction Briefing filed by the parties on February 28, 2017 (Dkt. #62).

JOINT CLAIM BRIEFING - 9
Civil Action No. 2:17-cv-01860-RAJ
61178565_1_Combined CC brief
227942\00046\61178565.v1



1           ***d.   Valve surreply brief (Dkt. #69)***

2    Not addressed further.

3        ***2.   Character attribute (JCCPS Term 2)***

4           ***a.   Treehouse opening brief (Dkt. #58)***

5    Treehouse's opening brief stated that "character attribute" was agreed to be interpreted as

6    "quality or characteristic inherent or ascribed to a character, object, or scene." Dkt. #58, at p. 5

7    (table). In view of the subsequent infringement and noninfringement contentions, Treehouse

8    contends no construction is necessary or appropriate.

9           ***b.   Valve answering brief (Dkt. #63, at pp. 11-12)***

10   *See* Section 1.b, above ("character attribute" was previously briefed together with

11   "character" by Valve).

12          ***c.   Treehouse reply brief (Dkt. #66)***

13   Not addressed further.

14          ***d.   Valve surreply brief (Dkt #69)***

15   Not addressed further.

16       ***3.   Present[ing] … to a/[the] user interface (JCCPS Term 3)***

17          ***a.   Treehouse opening brief (Dkt. #58, p. 5-6)***

18   Starting with the claim language that provides context for the claim term, it is clear that

19   the claimed "presenting" is used to "present" both characters or attributes as well as data related

20   to characters or attributes. For example, claim 1 specifies: "presenting to a user interface, one or

21   more character data defining one or more characters" and "presenting in real time to the user

22   interface, the selected character along with at least one of the character-attribute data."

23

24   JOINT CLAIM BRIEFING - 10
    Civil Action No. 2:17-cv-01860-RAJ
    61178565_1_Combined CC brief
227942\00046\61178565.v1

LOWE GRAHAM JONES ᴘʟʟᴄ

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

The specification explains that the data relating to a character or attribute may be video image data or audio data. (Col. 3:1-2; 4:60-63).[3] However, there is no mention of any data being displayed on a user interface. Indeed, in the context of video games, the data that constitutes the pose and appearance of a character or its attributes is generally not displayed – only characters and attributes are typically displayed. Further, the specification consistently supports interpreting "presenting," as used in relation to a user interface, to mean "providing." The phrase "providing to a user interface" or "provided to a user interface" or "provide to user interface" appears over two dozen times throughout the specification. (*See, e.g*., Col. 3:24-30, 4:41-44, 7:18-20). Thus, plaintiff's construction is consistent with the claim language and the specification and allows for both character/attribute *and* data to be presented to the user interface.

In contrast, defendant's construction is not supported by the specification and seeks to import extraneous limitations out of nowhere. This is evidenced by the fact that "displaying" in relation to a user interface appears only once in the specification – in the context of only "visual image displayed on the user interface." (Col 3:20-24). And their proposed word "generate[ing]" never appears in relation to a user interface. Claim differentiation further supports that "present[ing]" cannot mean "display[ing]" because claim 21 uses the word "displayed" ("causing said character to be displayed"). In fact, substituting "presenting" with "displaying" would make the disputed term read "displaying to a user interface" which does not make sense. To overcome this, defendant rewrites the limitation to "displaying *on a user device*," but the word "user

---

[3] The portions of the specification cited throughout this brief are meant to be exemplary.

JOINT CLAIM BRIEFING - 11
Civil Action No. 2:17-cv-01860-RAJ
61178565_1_Combined CC brief
227942\00046\61178565.v1

LOWE GRAHAM JONES ₚₗₗc

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

device" is not synonymous with user interface as evidenced by claim 21 ("user interface operating on a device of said user").

### b. *Valve answering brief (Dkt. #63, at pp. 5-6)*

| Phrase | Claim(s) | Treehouse's Proposal | Valve's Proposal |
|---|---|---|---|
| "presenting ... to a/ [the] user interface" | 1, 4, 15, 18 | "providing to a / [the] user interface" | "display[ing] and/or generate[ing] sound on a / [the] user device" |

The dispute concerning this phrase arises because Treehouse asks the Court to *change* (rather than explain) its meaning by replacing the claim term "presenting" with the non-synonymous word "providing." However, the '858 patent applicant knew how to use "providing" where "providing" was meant, as evidenced by its repeated appearance in the specification. *See, e.g.*, JA A20, '858 patent, at 7:18-21; 7:43-45; 8:6-7; 8:10-11; 8:49-51.

Valve's proposal helps the fact-finder understand that, in the context of the '858 patent, "presenting" must mean either the display of visual images or the generation of audible sound; only those two, and no other alternatives, are actually described in the '858 patent. *See, e.g.,* JA A18, '858 patent at 3:1-2; 4:60-63; *see also* Declaration of Dr. Michael Zyda in Support of Defendant's Answering Claim Construction Brief (Dkt. #65) ("Zyda Decl.") at ¶ 23. There is no other example of data that can be "presented" to a user in the '858 patent, despite Treehouse's speculative argument about the "pose and appearance of a character" (*supra* section III.3.a, from Op. Br. at 6 (Dkt. #58)), which is described nowhere in the '858 patent.

Treehouse tries to broaden the claim term "presenting" to be satisfied by merely "providing" data to a user interface, but that proposed construction is unhelpful to the fact finder who remains unsure as to what "presenting" actually is. Based on the claim as written and all the

JOINT CLAIM BRIEFING - 12
Civil Action No. 2:17-cv-01860-RAJ
61178565_1_Combined CC brief
227942\00046\61178565.v1

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

1    examples given in the specification and the figures of the '858 patent, the only way for a user to

2    select a character attribute is to visually see it or to hear an audio presentation of it.  *See* Zyda

3    Decl. at ¶ 21 (Dkt. #65).  It is not enough simply to "provide" data to another portion of the

4    system (*i.e.*, a user interface) without actually presenting the visual image or audible sound to a

5    user, as Treehouse now proposes.

6         Treehouse attempts to avoid this inevitable conclusion with two arguments unrelated to

7    the ambiguity of "providing" data.  First, Treehouse attempts to distinguish between presenting

8    character *data* versus the character itself, but this is also confusing and meaningless in the

9    context of a digital system, where *everything* related to a character is data.  *See* Zyda Decl. at ¶

10   22 (Dkt. # 65).  Finally, Treehouse's reliance on the distinction between the user interface and

11   the user's device is misplaced, because that distinction is of no practical importance.  In a similar

12   context, claim limitation 21e omits the "user interface" entirely when specifying that the

13   character is displayed "on said <u>device</u> of said user" (JA A24, '858 patent, at 16:8-11) (Dkt. #62)

14   (emphasis added), and Treehouse now omits it again when proposing a new construction for that

15   same claim element.  After all, the user interface must practically always include one or more

16   user devices, otherwise the user will see and hear nothing.  *See e.g.,* JA A19, '858 patent, at

17   6:40-48 (Dkt. #62); *see also* Zyda Decl. at ¶ 24 (Dkt. #65).

18         *c.   Treehouse reply brief (Dkt. #66, p. 1-2)*

19         The specification repeatedly and consistently uses the phrases "presenting ... to a user

20   interface" and "providing ... to a user interface" interchangeably. (*See e.g.,* Col. 3:24-30). This

21   interpretation is also consistent with the claim language which requires "presenting" both

22   characters or attributes as well as data related to characters or attributes.

23

24   JOINT CLAIM BRIEFING - 13
     Civil Action No. 2:17-cv-01860-RAJ
     61178565_1_Combined CC brief
     227942\00046\61178565.v1

Defendant ignores this unambiguous evidence by misrepresenting the specification and relying on improper extrinsic evidence to import limitations into the claim. First, defendant argues that "presenting" must mean displaying and generating a sound because those are the only two examples of data that can be "'presented' to a user." (see preceding section). Even if true, that is irrelevant because presenting to *a user* is not the same as presenting to *a user interface*, which is what the claims require. And even if presenting to a user is the same as presenting to a user interface, *how* data is presented to a user interface cannot limit *what* presenting the data means.

Second, defendant argues that "presenting" must mean displaying and generating a sound because that is "the only way for a user to select a character attribute" and displaying and sound generation are somehow required in addition to "simply" [] provid[ing] data to ... a user interface (*Id.*). Again, even if true, "providing data to the user interface" and "displaying" are separate steps that the defendant improperly conflates into one. That is irrelevant because *how a user selects a character attribute or what the system does with the data* after it is provided to the user interface cannot limit what presenting data to a user interface means. Indeed, "selection of a character attribute by the user" is a separate claim limitation in the asserted claims.

Third, relying on its expert, defendant argues that there is no need to distinguish between "presenting character *data* versus character itself" because "*everything* related to a character is data." (*Id.*) (emphasis in original). That, however, is contradicted by the specification itself

JOINT CLAIM BRIEFING - 14
Civil Action No. 2:17-cv-01860-RAJ
61178565_1_Combined CC brief
227942\00046\61178565.v1

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

which repeatedly distinguishes "character" and "character data" as well as the claim language that uses both terms.[4]

Finally, to justify its rewriting of "user interface" to *user device*, defendant argues that the distinction is not practically important and relies on claim 21 as support. (*Id.*). But the fact that claim 21e omits "user interface" and uses "causing said character to be displayed ... on said device" only shows a meaningful distinction between *user interface* and *user device*. This is confirmed by claim limitation 21a that uses both the terms: "through a user interface operating on a device of said user." Indeed, use of "displayed" with "device" instead of "presenting" with "user interface" confirms that presenting cannot mean the same as displaying.

### d.   Valve surreply brief (Dkt. #69, at pp. 4-5)

| Treehouse's Proposal | Valve's Proposal |
|---|---|
| "providing to a / [the] user interface" | "display[ing] and/or generate[ing] sound on a / [the] user device" |

Treehouse urges that "presenting" must be changed to "providing" because the '858 patent specification allegedly uses these terms "interchangeably," but the passage from the patent specification cited by Treehouse in section III.3.c, *supra*, (from Treehouse's Reply Claim

---

[4] There is no dispute that the specification explains the meaning of this term. So, for this definite term and others, it is improper to rely on extrinsic expert opinion. *Vitronics Corp. v. Conceptronic,* 90 F.3d 1576, 1583 (Fed. Cir. 1996). Treehouse did not offer any expert evidence to support its constructions of definite terms. Yet, defendant relied on expert opinion in its opposition. Such testimony should be disregarded. However, should the Court consider it, Treehouse submits its rebuttal expert testimony.

JOINT CLAIM BRIEFING - 15
Civil Action No. 2:17-cv-01860-RAJ
61178565_1_Combined CC brief
227942\00046\61178565.v1

LOWE GRAHAM JONES ᴾᴸᴸᶜ

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

Construction Brief ("Reply Br.") at 1 (Dkt. #66)) actually supports Valve.  At col. 3:24-30, the '858 patent plainly uses only *one* of these non-synonymous verbs – "providing":

> In another detailed facet, when an interactive presentation is ***provided*** to the user interface, the method further includes the step of, in response to user interaction with the interactive presentation, ***providing*** to the user interface at least one of either an audio presentation and/or a visual image presentation selected from the plurality of presentations.

There is no dispute that this passage describes the process (well-known by the time the patent application was filed) of "providing" a "presentation" to a user interface, in the same sense that a PowerPoint presentation file can be provided to a user interface by copying the file from a thumb drive to a laptop computer at a conference just before a panelist gets up to discuss it.  But to actually ***present*** anything – as required by the claims – the presentation must be processed through the portions of the user interface that convert it to something perceptible by a human user (such as video drivers and displays, or audio drivers and speakers).  As Valve has already demonstrated, "presenting" as used in the '858 patent requires either displaying visual images or generating audible sound – no other alternatives are described or claimed.  *See, e.g.,* JA A18, '858 patent at 3:1-2 (Dkt. #62); *id.* at 4:60-63; *see also* Zyda Decl. (Dkt. # 65) at ¶ 23.  The claim drafters intentionally selected to recite the action of "presenting" in the claims, and now their express selection must be given its intended effect.  *See Chef Am. Inc.*, 358 F.3d at 1374 ("[W]e discern nothing in the claims, the specification, or the prosecution history that indicates that the patentees here defined 'to' to mean 'at.'  To the contrary, the prosecution history suggests that the patentees intentionally used 'to' rather than 'at' in drafting the temperature requirements of the claim.").  Nothing else in Treehouse's arguments (*supra* section III.3.c, from Reply Br. at 1-2) should override this necessary conclusion.

JOINT CLAIM BRIEFING - 16
Civil Action No. 2:17-cv-01860-RAJ
61178565_1_Combined CC brief
227942\00046\61178565.v1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

### 4. *Real-time (JCCPS Term 4)*

#### a. *Treehouse opening brief (Dkt. #58, p. 7-8)*

The term "real time" is a commonly used term that implicitly refers to the actual time during which something happens. *See, e.g.,* Webster's dictionary.[5] So its meaning depends on the context and it is not indefinite. The '858 specification is generally directed to creating customized characters in virtual reality environments such as video games. The use of the term "real time" is in the context of "presenting in real time to the user interface." Thus, the relevant time scale in the context of the invention is the time period during which a user can perceive a response to the user's activity through the user interface. *See* Sacerdoti Decl.6, ¶14.

The specification supports this understanding. "For example, *once* the visual image data for a specific brand is *presented and selected*, the site program/ data may *present* to the user the option of changing the style, size or color of the shirt." (Col. 8:21-24) (emphasis added). "*Once a choice is made* by the user, *the choice is displayed* on the character (FIG. 10)" (Col. 10:18-19) (emphasis added). In other words, once a user chooses something, *e.g.,* an item, there is an immediate reaction to that choice – display of that item. Further, "[a] roll-over of each character highlights the character and may offer a sound bite indicative of the character's personality (FIG. 5). A *continued roll-over* of a character *reveals a full figure* of the character and audio or visual comments which further indicate the personality of the character (FIG. 6)." (Col. 9:41-46)

---

[5] "Real Time." Merriam-Webster.com. Merriam-Webster, n.d. Web. 2 Feb. 2017 at https://www.merriam-webster.com/dictionary/real%20time.

JOINT CLAIM BRIEFING - 17
Civil Action No. 2:17-cv-01860-RAJ
61178565_1_Combined CC brief
227942\00046\61178565.v1

LOWE GRAHAM JONES ᴾᴸᴸᶜ

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

(emphasis added). Presentation of information or data upon a roll-over is understood in the art to occur with no perceived lag after a cursor is placed over the "rolled over" entity on a screen. *See* Sacerdoti Decl., ¶14.

Hence, it is reasonably certain from the specification that as long as a user does not perceive any lag in the system's response to the user's activities, *e.g.*, presentation of the shirt style after selection of a brand, it will be understood to be happening in real-time. Therefore, in the context of the claim language and the specification, a person of ordinary skill in the art would understand with reasonable certainty that "real time" means "without any lag perceived by a user." *See* Sacerdoti Decl., ¶14.

### b. *Valve answering brief (Dkt. #63, at pp. 22-23)*

| Term | Claim(s) | Treehouse's Proposal | Valve's Proposal |
|------|----------|---------------------|------------------|
| "real-time" / "real time" | 1, 15, 18 | "without any lag perceived by a user" | Indefinite |

Treehouse tries to rescue this indefinite term by imagining language that does not actually appear anywhere in the patent specification. The '858 patent never uses the word "lag" or "perceive" anywhere in its specification or claims. The '858 patent does not even use any synonym of "lag" or "perceive" anywhere in the patent specification, nor does the specification describe anything like the concept of "lag perceived by a user." Even Treehouse's expert admitted that there is nothing in the '858 patent that discloses the concept of "lag perceived by a

user." *See* Transcript of the Expert Testimony of Dr. Earl David Sacerdoti, February 24, 2017 ("Sacerdoti Depo.") at 127:22 – 128:14 (Dkt. #64-1).[6]

Treehouse cannot point to anywhere in the specification of the '858 patent where any example of the time limits for "real time" are provided or described. Treehouse tries to fill that omission in the patent with testimony from its expert. But the phrase "real time" has various meanings in the industry, depending upon to what it is compared. *See* Zyda Decl. at ¶ 16 (Dkt. #65). Furthermore, Treehouse's expert admitted that the time that it takes for a human to perceive something depends upon the person in question and other factors. *See* Sacerdoti Depo. at 106:14-19 (Dkt. #64-1). Dr. Sacerdoti also admitted that the perceptible lag for a visual presentation would be different from that of an audio presentation. As one of at least ordinary skill in the art, Dr. Sacerdoti still did not know how much lag in an audio presentation would be perceptible to a user. *Id.* at 129:9-20. Hence, the amount of lag that is perceptible to a user is an inconsistent, subjective, and unreliable metric, which depends upon many factors and varies from user to user. *See* Zyda Decl. at ¶ 17 (Dkt. #65). Moreover, one of ordinary skill in the art would not know how much delay would cause a presentation to be deemed *not* "real time." *See* Zyda Decl. at ¶ 18.

Treehouse argues that the "presenting" claim steps require a particular definition of "real time," but that actually does nothing to resolve the temporal ambiguity. For example, one cannot

---

[6] Relevant excerpts from the Sacerdoti deposition transcripts appear at Exhibit A to the Declaration of Gavin W. Skok previously filed as Dkt. #64-1.

JOINT CLAIM BRIEFING - 19
Civil Action No. 2:17-cv-01860-RAJ
61178565_1_Combined CC brief
227942\00046\61178565.v1

LOWE GRAHAM JONES℠

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

1   assume that merely because something is "presented," that it necessarily must be presented

2   without any lag perceived by a user.  After all, things might be presented with no delay, or with

3   not greater than some unspecified amount of delay.  The patent fails to inform one of ordinary

4   skill in the art how much delay is excluded by the term "real time," or where the delay is

5   calculated.  The "real time" limitation cannot be rescued from its indefiniteness by Treehouse

6   reading in an extraneous limitation ("without any lag perceived"), out of nowhere.

7                      ### c.   *Treehouse reply brief (Dkt. #66, p. 9-11)*

8          Treehouse explained in its Opening Brief that "real time" is a commonly used term

9   whose meaning depends on the context. The specific context of the '858 specification is

10  presenting data (*e.g.,* character data or character attribute data) to a user interface in response to a

11  user's action (*e.g.*, selecting a character). Thus, once a user chooses, say, a red hat, the system

12  presents the red hat to the user interface and displays it. The specification consistently makes this

13  clear. A person of skill in the art reading this context would readily understand that the relevant

14  time scale is the time during which a user can perceive a response to the user's activity. If there

15  is no perceptible lag, the response happened in real time.

16         The fact that "lag" or "perceive" do not appear in the specification is irrelevant. As

17  explained above, that is not the test for whether the construction is proper and does not make the

18  construction "imaginary." Indeed because a person skilled in the art would readily understand the

19  meaning of real time, the specification does not define it.

20         Defendant attempts to wash away this clear intrinsic support by – once again – going

21  outside the specification into the general industry and inexplicably relate the term to the smooth

22  display of animation in networked virtual worlds. (*See* preceding section; Zyda Decl. ¶16).

23  However, the claims do not require animation at all. (Sacerdoti Reply Decl. ¶6). Therefore,

24  JOINT CLAIM BRIEFING - 20
    Civil Action No. 2:17-cv-01860-RAJ
    61178565_1_Combined CC brief
    227942\00046\61178565.v1

interpreting real time in the context of video animation and frame rates is neither appropriate nor relevant.

The so-called "admi[ssion]" of Treehouse's expert that the precise amount of perceived lag in a presentation may vary across users is merely an acknowledgment of the well-settled fact that perception can vary among people. (*Id.*) The precise amount of lag is immaterial and the fact that some users may be more sensitive to perceiving lag than others only reiterates the usual variance in a population. (*Id.*). "Absolute precision" is not required. *Nautilus*, 134 S.Ct. at 2129-30. A person skilled in the art would, with reasonable certainty, understand that as long as the user does not perceive a delay in presentation, it would be "presenting in real time."

### d.   *Valve surreply brief (Dkt. #69, at pp. 12-13)*

| Treehouse's Proposal | Valve's Proposal |
|---|---|
| "without any lag perceived by a user" | Indefinite |

Despite Treehouse's extrinsic-evidence-based arguments (*supra* section III.4.c, from Reply Br. at 10-11), Treehouse concedes:

- The meaning of "real time" depends on the context.
- The '858 patent never uses "lag" or "perceive," nor any synonym of these.
- The patent does not describe anything akin to "lag perceived by a user."
- Treehouse's expert admitted that there is nothing in the patent that discloses the concept of "lag perceived by a user."
- Treehouse's expert admitted that the time that it takes for a human to perceive something depends upon the person in question and other factors.
- Treehouse's expert admitted that the perceptible lag for a visual presentation

JOINT CLAIM BRIEFING - 21
Civil Action No. 2:17-cv-01860-RAJ
61178565_1_Combined CC brief
227942\00046\61178565.v1

LOWE GRAHAM JONES ᴾᴸᴸᶜ

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 ● F: 206.381.3301

would be different from that of an audio presentation.

See *supra* section III.4.b, from Ans. Br. at 22 (Dkt. #63); *supra* section III.4.c, from Reply Br. at 10 (Dkt. #66).   Moreover, "real time" has various meanings in the industry, depending upon what is compared.   *See* Zyda Decl. (Dkt. #65) at ¶ 16.   Also, the amount of lag that is perceptible to a user is an inconsistent, subjective, and unreliable metric that depends upon many factors and varies from user to user.   *See id.* at ¶ 17.   Furthermore, perhaps most significantly, an ordinarily skilled artisan would not know how much delay would cause a presentation to be deemed *not* "real time."   *See id.* at ¶ 18.   Thus, the '858 patent fails to inform a skilled artisan how much delay is excluded by "real time," or where the delay is calculated.

Thus, although Valve agrees that "absolute precision" is not required, claims 1, 15, and 18 (and all claims that depend from them) are nevertheless indefinite because they fail to delineate a meaningfully precise claim scope and set forth no objective boundaries for "real time."   *See Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370-71 (Fed. Cir. 2014) (claims reciting "unobtrusive manner" were indefinite because "[e]ven if a claim term's definition can be reduced to words, the claim is still indefinite if a person of ordinary skill in the art cannot translate the definition into meaningfully precise claim scope.") (citation omitted).

### 5.   *Tallying … by a plurality of users (JCCPS Term 5)*

#### a.   *Treehouse opening brief (Dkt. #58, p. 8-9)*

Both parties agree on the construction of "tallying" in "tallying the number of times the selected character attribute has been selected by a plurality of users." The only dispute is how the phrase "by a plurality of users" is interpreted. Defendant does not offer any construction on what the phrase means. Plaintiff's construction makes it clear that in the context of the specification,

JOINT CLAIM BRIEFING - 22
Civil Action No. 2:17-cv-01860-RAJ
61178565_1_Combined CC brief
227942\00046\61178565.v1

LOWE GRAHAM JONES ᴾᴸᴸᶜ

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

1   the plain and ordinary meaning of this limitation is that the tallying of selections is aggregated

2   across a plurality of users: "counting or calculating the total number of times the selected

3   character attribute has been selected, aggregated across a plurality of users."

4       The specification explains that "the present invention provides for the compilation and

5   provision of data about a target audience. The system provides the data necessary to determine

6   market trends in real-time and forecast trends based on the popularity of certain profiles and

7   choices made by users." (Col. 13:1-5; *see also* Col. 2:44-49). "For example, a clothing

8   manufacturer may use the system to test market a new style of shirt…. the system collects data

9   indicative of the demographics of the users and the styles of shirts favored by the users which

10  fall within a specific demographic." (Col. 12:33-48). Thus, the specification clearly indicates that

11  the invention aggregates data about the choices that a group of users makes; it does not merely

12  keep separate tallies of the choices of each user. *See* Sacerdoti Decl., ¶15. Simply counting that

13  user 1 selected shirt style A five times and user 2 selected shirt style A two times does not reveal

14  the market trend for that shirt style. That the tallying aggregates selections across the users is

15  further confirmed by claim 28 which provides that the data about the selected character attribute

16  (contained in the "character profile") is used "to create marketing data representative of *the users*

17  *of the CE network site*." (emphasis added).

18      *b.   Valve answering brief (Dkt. #63, at pp. 2-5)*

19

| Phrase | Claim(s) | Treehouse's Proposal | Valve's Proposal |
|---|---|---|---|
| "tallying the number of times the selected character attribute has been selected by a plurality of users" | 1, 15 | "counting or calculating the total number of times the selected character attribute has been selected, aggregated across a plurality of users" | "counting or calculating a total number of times the selected character attribute has been selected by a plurality of users" |

23

24  JOINT CLAIM BRIEFING - 23

Civil Action No. 2:17-cv-01860-RAJ
61178565_1_Combined CC brief
227942\00046\61178565.v1

LOWE GRAHAM JONES ₚₗₗc

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

The term "plurality" in the claim phrase "tallying the number of times the selected character attribute has been selected by a plurality of users" means "more than one."  Hence, based on its ordinary meaning, the "tallying …" phrase plainly encompasses at least the following situations:

1)   counting the number of times the selected character attribute has been selected by each of at least two users (*e.g.*, counting that user 1 has selected a red shirt once, and that user 2 has selected a red shirt zero times);

2)   counting the number of times the selected character attribute has been selected by each of at least two users, and then aggregating the total (*e.g.*, counting that user 1 has selected a red shirt once, and that user 2 has selected a red shirt zero times, and then aggregating the total number of times that the red shirt has been selected by both users as summing to a total of one time); and

3)   counting the number of times the character attribute has been selected by the plurality – e.g. both of the two users (*e.g.*, counting that the plurality of both user 1 and user 2 as a group selected the red shirt zero times).

All three of these scenarios are literally encompassed by the claim terms based on commonplace analysis of the words in the claims, and could be useful to develop marketing statistics.  The patent specification is consistent with all three possibilities.  While no expert testimony is required to confirm this, Valve's technical expert, Dr. Michael Zyda, agrees with this meaning.  *See* Zyda Decl. at ¶ 20.

Nevertheless, Treehouse asks the Court to limit the breadth of this term by replacing the claim term "by" with a new term – "aggregated across" – that has no support in the intrinsic record.  The '858 patent never states "aggregate" in its specification or claims.  There is also no

JOINT CLAIM BRIEFING - 24
Civil Action No. 2:17-cv-01860-RAJ
61178565_1_Combined CC brief
227942\00046\61178565.v1

LOWE GRAHAM JONES ᴘʟʟᴄ

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 ● F: 206.381.3301

synonym for "aggregate"; for example, the patent nowhere mentions or gives any example of "summing," or a "total" of the tallies across multiple users, or any similar concept.

Instead, Treehouse argues (*see supra* section III.5.a, from  Op. Br. at 9 (Dkt. #58)) that unrelated excerpts from the specification, which generally mention a desire for determining "market trends" or "demographic" characteristics, justify replacing "by" with "aggregated across" – a phrase that appears nowhere in the patent.  However, only dependent claims 20, 27, and 28 require determining demographic characteristics or marketing data, and *none* of those claims depend from any independent claim that requires "tallying."  JA A24, '858 patent, at 15:31-35; 16:31-39 (Dkt. #62).  Hence, the specification excerpts cited by Treehouse are irrelevant to how a count or tally is performed or calculated – indeed, *nothing* in the specification requires that "aggregating across" must necessarily be a part of the claimed performance of "tallying ... by a plurality of users."

It would be improper for the Court to import the "aggregated across" limitation into the claims, especially because the applicants did not *clearly and unambiguously disavow* the concepts of tallying choices by *each of* a plurality of users, without aggregating (*i.e.*, situation #1 on page 1, *supra*), or of tallying choices by the entire plurality of users as a group (*i.e.*, situation #3 on page 1, *supra*).  "Disavowal requires expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope."  *Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1315 (Fed. Cir. 2010) (quoting *Epistar Corp. v. ITC*, 566 F.3d 1321, 1335 (Fed. Cir. 2009)).

The '858 patent does not disavow tallying choices by *each of* a plurality of users (*e.g.*, keeping a plurality of tallies, one for each of a plurality of users).  Although Treehouse's expert argues that aggregating across a plurality of users would be "consistent with" determining

JOINT CLAIM BRIEFING - 25
Civil Action No. 2:17-cv-01860-RAJ
61178565_1_Combined CC brief
227942\00046\61178565.v1

LOWE GRAHAM JONES ᴾᴸᴸᶜ

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

market trends or demographic characteristics (*see* Declaration of Earl D. Sacerdoti (Dkt. #59) ("Sacerdoti Decl.") at ¶ 15), that is not the same as demonstrating that tallying for each of a plurality of users has been *disavowed*.  It was not, and the ordinary meaning of "tallying ... by a plurality of users" is indisputably broad enough to also include the concept of keeping tallies for each of a plurality of users.  *See* Zyda Decl. at ¶ 19 (Dkt. #65).

Treehouse's expert also recognized that one of ordinary skill in the art in the summer of 2000 could conceive of dozens of reasons (other than marketing or demographics) to keep a tally for each of a plurality of users.  *See* Sacerdoti Depo. at 137:11–138:3 (Dkt. #64-1).  Indeed, if the patent drafters had wanted to narrow claims 1 and 15 to require the aggregation of a plurality of individual tallies for each of a plurality of users into a single number, then they could have described it in the specification, and written it in the claims.  They indisputably did neither.  Rather, Treehouse now attempts to narrow the "tallying" limitation by reading in an extraneous limitation ("aggregation") out of nowhere, presumably in an attempt to distinguish Valve's identified prior art.  This is improper.  *See, e.g., Hill-Rom Servs. v. Stryker Corp.*, 755 F.3d 1367, 1374 (Fed. Cir. 2014) ("Claim terms should be given their plain and ordinary meaning to one of skill in the art at the relevant time and cannot be rewritten by the courts to save their validity.").

### c.   Treehouse reply brief (Dkt. #66, p. 4-5)

Defendant does not offer any construction for the only disputed part, "by a plurality of users." After correctly noting that a construction can be based on "ordinary meaning," defendant fails to identify that ordinary meaning within the context of the specification.

Considered in a vacuum, the ordinary meaning of any word or phrase can have multiple interpretations. Not surprisingly, defendant comes up with three potential interpretations – tallying for each user, tallying aggregated across users, and tallying for all users as a group. That,

JOINT CLAIM BRIEFING - 26
Civil Action No. 2:17-cv-01860-RAJ
61178565_1_Combined CC brief
227942\00046\61178565.v1

LOWE GRAHAM JONES℠

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

however, is not the test for claim construction. Plain meaning of the claim must be based within the context of the specification. Under that standard, there is only one construction – the second one: aggregated across a plurality of users.

To justify its consideration in a vacuum, defendant wants the Court to ignore the specification because it does not contain the word "aggregate" and because "determining market trends" is just a "desire" that does not appear in the claims. (see preceding section). The test for proper construction is not whether the identical word appears in the specification but whether it is supported by the specification. Indeed, the construction adopted by the Patent and Trial Appeal oard (PTAB) and agreed- to by the defendant for "tallying" is "counting or calculating," which words do not appear anywhere in the specification.

Further, determining market trends is not just a desire but a fundamental objective and purpose of the claimed invention: "the present *invention provides* for the compilation and provision of data about a target audience. The system provides the data necessary to determine market trends in real-time and forecast trends based on the popularity of certain profiles and choices made by users." (Col. 13:1-5; *see also* Col. 2:44-49, 55-58). Treehouse's construction – aggregated across a plurality of users – is the only interpretation that achieves this objective. (Sacerdoti Reply Decl. ¶7). And while "market trends" does not appear in these claims, collecting data in response to user choices that allows determining the market trends is claimed.

Having come up with three interpretations based on "commonplace" context, defendant argues that they are all applicable because the patent does not "clearly" "disavow" the first and third interpretations. (Ans. Br. at 3). But that is misplaced. The specification does not disavow these interpretations because they were never contemplated to begin with. Likewise, Treehouse's expert opined that there could be reasons to keep tally for each user; but it was specifically in the

general "field" of the invention, *not* the '858 patent. (Sacerdoti Reply Decl. ¶7). Indeed, a person of ordinary skill in the art with an elementary knowledge of market research would understand the specification to be describing precisely the aggregation of selections of multiple users. (*Id.*) Because market research does not require tallying for each user, the selections of each item can be tallied without consideration of which user made which selection. (*Id.*). In fact, that is the easy and more efficient way. (*Id.*).

> ### d. *Valve surreply brief (Dkt. #69, at pp. 2-3)*

| Treehouse's Proposal | Valve's Proposal |
|---|---|
| "counting or calculating the total number of times the selected character attribute has been selected, aggregated across a plurality of users" | "counting or calculating a total number of times the selected character attribute has been selected by a plurality of users" |

Treehouse concedes, as it must, that "tallying … by a plurality of users" can be construed at least three different ways (*supra* section III.5.c, from Reply Br. at 5 (Dkt. #66)).  Nevertheless, citing no authority, Treehouse argues that two of the interpretations supported by the claim language must be excluded "because they were never contemplated to begin with."  *Id.*  In making this argument, Treehouse ignores the express statements by the patentee attempting to *broaden* the meaning of the claim language to the maximum permissible extent, even beyond the described embodiments:

> While this invention has been described in conjunction with specific embodiments thereof, it is evident that many alternatives, modifications, and variations will be apparent to those skilled in the art.  ***Accordingly, preferred embodiments of the invention as set forth herein are intended to be illustrative, not limiting***.  Various changes may be made without departing from the spirit and scope of the invention as defined in the claims.

JOINT CLAIM BRIEFING - 28
Civil Action No. 2:17-cv-01860-RAJ
61178565_1_Combined CC brief
227942\00046\61178565.v1

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

1  *See, e.g.,* JA A20, '858 patent at 13:12-19 (Dkt. # 62).[7]  Furthermore, even assuming, contrary to

2  fact, that the illustrative variation of tallying that requires "aggregating across a plurality of

3  users" were actually described anywhere in the patent, Treehouse's adoption of that variation as

4  a claim limitation violates fundamental patent law principles that require the Court to consider

5  the breadth of the claim language regardless of the number of disclosed embodiments.  *Phillips.*,

6  415 F.3d at 1316, 1323 ("[W]e have expressly rejected the contention that if a patent describes

7  only a single embodiment, the claims of the patent must be construed as being limited to that

8  embodiment.").

9         The '858 patent simply does not disavow tallying choices by *each of* a plurality of users

10  (*e.g.*, keeping a plurality of tallies, one for each of a plurality of users).  "Tallying the number of

11  times the selected character attribute has been selected by a plurality of users" does not require

12  aggregation across multiple users.  It also indisputably covers a situation that tallies the separate

13  facts that one user has selected a red shirt for a character, for example, and that a second user has

14  not selected a red shirt.  *Supra* section III.5.b, from Ans. Br. at 2-3 (Dkt. #63); Zyda Decl. (Dkt.

15  # 65) at ¶ 20.  Therefore, it would be improper for the Court to import the "aggregated across"

16  limitation into the claims.  *Spine Solutions*, 620 F.3d at 1315.

17         Finally, even assuming, contrary to fact, that "determining market trends is not just a

18  desire but a fundamental objective and purpose of the claimed invention" (*supra* section III.5.c,

19  from Reply Br. at 5), *nothing* in the patent requires that "aggregating across" must necessarily be

20

21

22

23  ─────────────────────
   [7] Unless otherwise indicated, all emphasis appearing in this brief has been added.

24  JOINT CLAIM BRIEFING - 29
   Civil Action No. 2:17-cv-01860-RAJ
   61178565_1_Combined CC brief
   227942\00046\61178565.v1

a part of the claimed step of "tallying … by a plurality of users."  This is because, as Valve has already demonstrated, the claim language and the so-called "fundamental objective" are satisfied regardless of which variation of tallying is implemented.  *Supra* section III.5.b, from Ans. Br. at 2-3.

If the patent drafters had wanted to narrow claims 1 and 15 to require the aggregation of a plurality of individual tallies for each of a plurality of users into a single number, they could have described it in the specification and written it in the claims – but they did neither.

### 6.  *Character persona data (JCCPS Term 6)*

#### a.  *Treehouse opening brief (Dkt. #58, p. 11-12)*

The dispute between the parties on the constructions for "character persona data" is really a dispute on the construction for "character persona." Plaintiff's construction for this term should be adopted for the same reasons as explained above for the term "character persona." Moreover, plaintiff's construction is consistent with the agreed-upon constructions of "character data" and "character attribute data." Plaintiff's construction provides that "character persona data" is data related to a character persona in the same way that "character data" is data related to a character and "character attribute data" is data related to a character attribute. The word "indicative" in defendant's construction is ambiguous.

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

1

    **b.  Valve answering brief (Dkt. #63, at pp. 8-10)**

2

| Phrase | Claim(s) | Treehouse's Proposal | Valve's Proposal |
|---|---|---|---|
| "character persona data" | 4-7 | "data related to personality of a character derived from the collection of attributes and actions ascribed to a character" | "data indicative of a collection of attributes and actions ascribed to a character" |

        Treehouse's proposed construction improperly adds a new "derived" limitation, which has no support in the intrinsic record of the '858 patent.  Indeed, the '858 patent specification completely lacks the word "derived" with respect to any character persona or personality. Rather, Treehouse's requirement for a "derived" personality is a creature of this litigation, invented by Treehouse during these proceedings to falsely augment the distinction between character persona data versus character data and character attribute data.

        Unlike Treehouse's proposed constructions, Valve's proposals exactly match the constructions adopted by the U.S. Patent & Trademark Office in the now-concluded *Inter Partes* Review (which adjudicated validity questions for the same asserted '858 patent).  JA A381, PTAB Institution Decision, at 12 (Dkt. #62).  Consistency, in the adjudication of infringement and validity, favors adopting consistent constructions with the PTAB.  *See Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) ("[T]he claims must be interpreted and given the same meaning for purposes of both validity and infringement analyses.").

        Treehouse's request for a narrowing addition to – and inconsistency with – the PTAB's constructions is unjustified here, because the specification of the '858 patent expressly supports the PTAB's broader construction.  *See* Zyda Decl. at ¶¶ 13-14.  For example, the '858 patent

JOINT CLAIM BRIEFING - 31
Civil Action No. 2:17-cv-01860-RAJ
61178565_1_Combined CC brief
227942\00046\61178565.v1

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

expressly and simply states that: "the 'persona' of a character is **defined** by a number of attributes, which in turn are defined by at least one of audio data and visual image data." *See* JA A20, '858 patent at 7:23-25.  In the face of this clear definition that is expressly stated in the '858 patent specification, Treehouse's expert oxymoronically argues that "[t]he word 'define' here is not used in the literal sense …." *See* Sacerdoti Decl. at ¶16.

The PTAB's broader definition is reinforced by consistent statements in the '858 patent specification. *See, e.g.,* JA A18, '858 patent at 3:59-60; 4:32-33; and JA A21 at 10:22-27.  Note also that the '858 patent at 3:16-18 (JA A18) expressly supports the "indicative of" portion of the PTAB's construction (of "character persona data").

The '858 specification also contradicts Treehouse's allegation (Op. Br. (Dkt. #58) at 10) that the "true meaning" of character persona requires, not only the attributes and actions ascribed to a character, but also some additional "derived" personality – despite no evidence of a disavowal of the broader scope of the PTAB's adopted construction.  *Spine Solutions*, 620 F.3d at 1315 ("Disavowal requires expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope.").

### c.   *Treehouse reply brief (Dkt. #66, p. 8)*

The dispute between the parties on the constructions for "character persona data" is really a dispute on the construction for "character persona." For the reasons explained above, Treehouse's construction is proper.

JOINT CLAIM BRIEFING - 32
Civil Action No. 2:17-cv-01860-RAJ
61178565_1_Combined CC brief
227942\00046\61178565.v1

LOWE GRAHAM JONES℠

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

### d.   Valve surreply brief (Dkt. #69, at p. 6)

| Treehouse's Proposal | Valve's Proposal |
|---|---|
| "data related to personality of a character derived from the collection of attributes and actions ascribed to a character" | "data indicative of a collection of attributes and actions ascribed to a character" |

Treehouse fails to justify its proposed insertion of "derived from" into the disputed "character persona" terms.  *See* Reply Br. at 6-8 (Dkt. #66).  First and foremost, the concept of "personality" is already understood to be included within the "character attributes," as interpreted by both parties (and the PTAB).  Hence, a character's "personality" is among its "attributes."   Thus, Treehouse's argument that "personality cannot just be a collection of attributes and actions" (Reply Br. at 7) misses the point because whether the personality of a character is "defined by" or "derived from" its attributes is as irrelevant as it is unclear.  As Valve and the PTAB have already explained, the '858 patent expressly and simply states that: "the 'persona' of a character is **defined** by a number of attributes, which in turn are defined by at least one of audio data and visual image data."  *See* JA A20, '858 patent at 7:23-25.

Treehouse's illogical and strained proposal improperly narrows "defined" to mean only "derived from" or "characterized by" (*see* Section III.B.2, *infra*), and must be rejected.

### 7.   Data comprises ... presentations (JCCPS Term 7)

### a.   Treehouse opening brief (Dkt. #58, p. 13-14)

The phrase "character-persona data comprises at least one of audio presentations and visual image presentations" is not indefinite and does not need any construction. However, should the Court decide that a construction is required, it means "character-persona data

JOINT CLAIM BRIEFING - 33
Civil Action No. 2:17-cv-01860-RAJ
61178565_1_Combined CC brief
227942\00046\61178565.v1

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

comprises at least one of data defining audio presentations and data defining visual image presentations."

The context of the claim and the specification make it clear that the reference to "audio presentations and visual image presentations" stored in the character-persona data in claim 6 is to the *data* which defines the audio *presentations* and visual image presentations that are presented to the user interface. The specification explains that the "character has a plurality of attributes, each defined by at least one of either audio data and/or visual image data. The plurality of attributes collectively defines a character persona. The method further includes the step of providing to the user interface, at least one interactive presentation selected from a plurality of presentations based on the character persona. The interactive presentation is defined by audio data and/or visual image data." (Col. 3:57-63, *see also* Col. 2:65-3:5; (Col. 11:22-27).

In the context of audio data and visual image data, the specification also uses them equivalently with audio presentation and visual image presentation which shows that they are linked. (*See, e.g.*, Col. 4:49-53) ("These site programs operate in conjunction with various stored audio *data/presentations* and visual image *data/presentations* to provide the presentations to the user interface.") (emphasis added). *See* Sacerdoti Decl., ¶17.

Hence, it is reasonably certain from the specification that "character-persona data comprises at least one of audio presentations and visual image presentations" means "character persona data comprises at least one of data defining audio presentations and data defining visual image presentations." The "stored audio data/presentations and visual image data/presentations" described in the specification informs a person of ordinary skill in the art with reasonable certainty the scope and meaning of this limitation. *See* Sacerdoti Decl., ¶17.

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

### b.   Valve answering brief (Dkt. #63, at pp. 25-26)

| Phrase | Claim(s) | Treehouse's Proposal | Valve's Proposal |
|---|---|---|---|
| "character-persona data comprises at least one of audio presentations and visual image presentations" | 6 | "character-persona data comprises at least one of data defining audio presentations and data defining visual image presentations" | Indefinite |

Treehouse's proposed construction requires the corrective insertion of "data defining" – *twice* – and thereby highlights exactly why the phrase is otherwise indefinite.   Claim 6 is confusing and indefinite as written, because while data may be presented, logically data doesn't comprise its *own* presentation.   *See* Zyda Decl. at ¶ 29.

Treehouse's proposed construction asks the court to re-write claim 6 to remedy the foregoing confusion.   However, rescuing claim 6 from its indefiniteness in this way would be legally improper.   *See Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1321 (Fed. Cir. 2013) ("[The patentee's] proposed construction conflicts with the plain language of [the] claim []. By accepting [the patentee's] proposed construction, the district court would have effectively rewritten the claim language from 'user-defined relationship information' to 'system-defined relationship information.'").

### c.   Treehouse reply brief (Dkt. #66, p. 8)

Defendant incorrectly states that "Treehouse's proposed construction requires rewriting the claim to insert '"data defining" – twice.," (Ans. Br. at 25). In fact, Treehouse contends that this term does not need any construction. Treehouse proposed a construction simply to clarify what one skilled in the art would understand the term to mean: that the "audio presentations and visual image presentations" which comprise part of the character-persona data in claim 6 is a

JOINT CLAIM BRIEFING - 35
Civil Action No. 2:17-cv-01860-RAJ
61178565_1_Combined CC brief
227942\00046\61178565.v1

LOWE GRAHAM JONES℠

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

reference to the data defining those "audio presentations and visual image presentations." In any event, unlike the plaintiff in *Taurus IP, LLC v. DaimlerChrysler Corp*., Treehouse's construction is not directly contradicted by the claim language or the specification. In fact, Treehouse's reading is repeatedly supported by the specification. (See Col. 7:11-15; Sacerdoti Decl. ¶17). Defendant's argument that claims 3,10, and 11 specify that data comprises "data" only reinforces that one of skill in the art would have no trouble understanding that the reference to "audio presentations and visual image presentations" comprising the "character-persona data" refers to the *data* defining audio presentations and visual image presentations. (Sacerdoti Reply Decl. ¶8).

### d.   Valve surreply brief (Dkt. #69, at p. 6)

| Treehouse's Proposal | Valve's Proposal |
|---|---|
| "data related to personality of a character derived from the collection of attributes and actions ascribed to a character" | "data indicative of a collection of attributes and actions ascribed to a character" |

Treehouse fails to justify its proposed insertion of "derived from" into the disputed "character persona" terms.  *See* Reply Br. at 6-8 (Dkt. #66). First and foremost, the concept of "personality" is already understood to be included within the "character attributes," as interpreted by both parties (and the PTAB). Hence, a character's "personality" is among its "attributes."   Thus, Treehouse's argument that "personality cannot just be a collection of attributes and actions" (Reply Br. at 7) misses the point because whether the personality of a character is "defined by" or "derived from" its attributes is as irrelevant as it is unclear.  As Valve and the PTAB have already explained, the '858 patent expressly and simply states that: "the 'persona' of a character is ***defined*** by a number of attributes, which in turn are defined by at least one of audio data and visual image data."  *See* JA A20, '858 patent at 7:23-25.

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

Treehouse's illogical and strained proposal improperly narrows "defined" to mean only "derived from" or "characterized by" (*see* Reply Br. at 6-8 (Dkt. #66)), and must be rejected.

### 8. *Accessible to said CE network site (claim 21c) (JCCPS Term 8)*

#### a. *Treehouse opening brief (Dkt. #58, p. 26-28)*

This term is discussed by Treehouse together with the next term ("causing said character…"); see the next claim term below.

#### b. *Valve answering brief (Dkt. #63, at pp. 18-20)*

This term is also discussed by Valve together with the next term ("causing said character…"); see the next claim term below.

#### c. *Treehouse reply brief (Dkt. #66)*

See the next claim term below.

#### d. *Valve surreply brief (Dkt. #69)*

See the next claim term below.

### 9. *Causing said character to be displayed on said CE network site on said device of said user (claim 21e) (JCCPS Term 9)*

#### a. *Treehouse opening brief (Dkt. #58, p. 26-28)*

Disputed terms xviii and xiv are part of the same claim and are hence discussed together here. Looking at the claim language that provides context, it is clear that these terms are not indefinite but simple clerical errors that failed to provide an antecedent basis.

The preamble of the claim references "a plurality of CE network sites" as does the first step 21a ("said plurality of CE network sites"). This is a method claim of operating a plurality of CE network sites that includes a user creating a character with a character profile for use on the plurality of sites (21a), associating the user with the character profile (21b), storing the

JOINT CLAIM BRIEFING - 37
Civil Action No. 2:17-cv-01860-RAJ
61178565_1_Combined CC brief
227942\00046\61178565.v1

LOWE GRAHAM JONES ᴾᴸᴸᴄ

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

1    associating information and character profile in a database accessible to those sites (21c),

2    receiving a request for access to one of those sites (21d), and then retrieving the profile to display

3    the character on that requested site (21e). However, even assuming that these are not clerical

4    errors correctable by the Court, both these terms would be understandable to a reasonable degree

5    of certainty to a person of ordinary skill in the art after reading the specification.

6        The specification supports this reading of the claim and consistently describes storing the

7    associating information and character profile in a database, as required by claim 21c. See Figs. 1

8    and 11. "Upon selection of a character, the method includes the step of storing data indicative of

9    the selected character in a database." (Col. 5:1-3), *see also* (Col. 9:49-53). The specification

10   explicitly states that the database is accessible to multiple CE network sites. "In accordance with

11   the present invention, the character created by the user may be retrieved from the central

12   database 24 by the user through other C-E sites." (Col. 11:39-41). These references in the

13   specification and claim language inform a person of skill in the art with reasonably certainty that

14   "accessible to said CE network site" means "accessible to said plurality of CE network sites" and

15   the person of skill in the art would understand the scope of this term despite the drafting error.

16   *See* Sacerdoti Decl., ¶26. *See IBM v. Priceline Grp. Inc*., 2016 U.S. Dist. LEXIS 150068 at *18,

17   No. 15-137, (D. Del. 2016) (internal citations omitted).

18       Likewise, with respect to the term "causing said character to be displayed on said CE

19   network site on said device of said user," no single CE network site is identified until claim 21d

20   of the claimed method. The "one of said plurality of network sites" identified in claim 21d is the

21   only single CE network site named in the claim. So the "said CE network site" of claim 21e must

22   be the only single CE network site identified in the claim, namely the "one of said plurality of

23   CE network sites" of claim 21d. The specification confirms that the character previously created

24   JOINT CLAIM BRIEFING - 38
     Civil Action No. 2:17-cv-01860-RAJ
     61178565_1_Combined CC brief
     227942\00046\61178565.v1

by a user is retrieved from the database and displayed for any further modification on the device of the user by the newly accessed CE network site. *See, e.g.*, Col. 11:39-44, 9:60-62, Fig. 11. Hence, the claim language and the specification informs a person of ordinary skill in the art with reasonable certainty of the scope and meaning of this term to be "causing said character to be displayed by said one of said plurality of CE network sites on said device of said user." *See* Sacerdoti Decl., ¶27.

    **b. *Valve answering brief (Dkt. #63, at pp. 18-20)***

| **Phrase** | **Claim(s)** | **Treehouse's Proposal** | **Valve's Proposal** |
|---|---|---|---|
| "accessible to said CE network site" | 21 | "accessible to said plurality of CE network sites" | Indefinite |
| "causing said character to be displayed on said CE network site on said device of said user" | 21 | "causing said character to be displayed by said one of said plurality of CE network sites on said device of said user" | Indefinite |

   Both of these two phrases indisputably lack antecedent basis.  Treehouse alleges "clerical error" and asks for correction to the claim language.  *Supra* section III.9.a, from Op. Br. at 26 (Dkt. #58).  But, as written, the subject phrases of claim 21 are conspicuously indefinite, not only because of the lack of antecedent basis, but also because the second phrase requires the CE network site to be on a user device, which contradicts the "other than a user device" language of the undisputed construction of "CE network site" as adopted by the PTAB and agreed to by both parties.  *See, e.g., supra* section II, from Op. Br. at 4 (Dkt. #58).

   Treehouse now asks the court to make three material changes to the claim language to rescue it from indefiniteness: (1) in the first subject phrase, Treehouse asks the court to replace "said CE network site" with "said plurality of CE network sites"; (2) in the second subject

JOINT CLAIM BRIEFING - 39
Civil Action No. 2:17-cv-01860-RAJ
61178565_1_Combined CC brief
227942\00046\61178565.v1

LOWE GRAHAM JONES™

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

phrase, Treehouse asks the court to change "displayed on" to "displayed by," which completely changes the meaning of the phrase (by switching subject and object); and (3) also in the second subject phrase, Treehouse asks the court to change "said CE network site" to "said one of said plurality of CE network sites."

There are compelling reasons for the Court to decline Treehouse's invitation to re-write another claim in the '858 patent.  First, Treehouse's proposed change is not the only plausible one.   Second, the errors are not merely clerical, and the requested corrections are both substantive and consequential.  For example, there is a very substantial difference in meaning between the existing phrase "displayed on" versus the proposed phrase "displayed by."  What follows the existing phrase is an object being acted upon, while what follows the proposed phrase is a subject that itself acts.  The distinction between "displayed on" versus "displayed by" is underscored by its context of the '858 patent; one of ordinary skill in the art would understand that the display is part of the user device rather than the CE network site (*see e.g.,* the '858 patent at Fig. 1).  *See* Zyda Decl. at ¶ 34.  Treehouse's expert acknowledged this distinction, stating that a CE network site as recited in the claims of the '858 patent cannot be on a user device.  *See* Sacerdoti Depo. at 183:1-6.

There is also a substantial difference between singular and plural in the present context. Note that claim 21 includes both the plural concept of "a plurality of CE network sites" and the singular concept of "one of said plurality of CE network sites."  Treehouse asks the Court to change the first subject claim phrase from singular to plural, but to change the second subject claim phrase in such a way that it remains singular.  However, the lack of antecedent basis could also be plausibly corrected by alternatively changing the first phrase in such a way that it remains singular.  For example, the first phrase could plausibly alternatively be changed to include "one

LOWE GRAHAM JONES℠

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

1  of said plurality of CE network sites" to avoid the antecedent basis issue, rather than the change

2  that Treehouse now urges the Court to adopt.

3         The foregoing alternative would be reasonably plausible to one of ordinary skill in the

4  art, because one of ordinary skill in the art would understand that for the method to function as

5  claimed, the database recited in claim 21c need only be accessible to the one of the plurality of

6  CE network sites to which access is requested.  *See* Zyda Decl. at ¶ 33.  Even Treehouse's expert

7  admitted that the '858 patent contemplates storing associating information and a character profile

8  in a database that is accessible to *a particular* CE network site, such as the *one* through which

9  the character was created.  *See* Sacerdoti Depo. at 172:15 - 173:11.  Hence, it is reasonably

10 plausible that the patent applicant may have meant to introduce "one of said plurality of CE

11 network sites" in step 21c, and then refer back to that CE network site as the one to which access

12 is requested in step 21d.  *See* Zyda Decl. at ¶ 33.

13        For the foregoing reasons, the Court should decline to rewrite the claim.  *See Ultimax*

14 *Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1353 (Fed. Cir. 2009).

15              *c.  Treehouse reply brief (Dkt. #66, p. 13-14)*

16        Defendant's unsupported speculation on alternate meanings does nothing to establish that

17 one of ordinary skill in the art would not understand these terms in their proper context. For

18 example, Defendant argues that the singular phrase "said CE network site" in step 21c could be

19 kept singular as "one of said plurality of CE network sites" rather than construed as the plural

20 "said plurality of CE network sites" as proposed by Treehouse. However, this reading contradicts

21 the fact that claim 21 in its preamble claims a method of operating a *plurality* of CE network

22 sites, and step 21a causes a user "to create a character for use on said plurality of CE network

23 sites." (Col 15:36-41). Further, step 21d enables "a user to retrieve a previously created character

24 JOINT CLAIM BRIEFING - 41
   Civil Action No. 2:17-cv-01860-RAJ
   61178565_1_Combined CC brief
   227942\00046\61178565.v1

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

profile from a database," "upon receiving a request for access to one of a plurality of CE network sites." This would require the database to be accessible to *each* of the plurality of CE network sites, as it does in Treehouse's construction. Dr. Zyda's alternative construction, on the other hand, would render the claim meaningless. (Sacerdoti Reply Decl. ¶16-17).

Additionally, the singular "one of said plurality of CE network sites" is not introduced into claim 21 until step 21d. Hence it cannot be referring to the earlier step 21(c). One of ordinary skill in the art would not be confused by the term, and it would not be indefinite. (*Id.*).

### d.   *Valve surreply brief (Dkt. #69, at pp. 11-12)*

| Phrase | Claim(s) | Treehouse's Proposal | Valve's Proposal |
|---|---|---|---|
| "accessible to said CE network site" | 21 | "accessible to said plurality of CE network sites" | Indefinite |
| "causing said character to be displayed on said CE network site on said device of said user" | 21 | "causing said character to be displayed by said one of said plurality of CE network sites on said device of said user" | Indefinite |

Valve demonstrated multiple compelling reasons for the Court to decline Treehouse's invitation to re-write another claim in the '858 patent: First, Treehouse's proposed change is not the only plausible one. Second, the errors are not merely clerical, and the requested corrections are both substantive and consequential. For example, there is a substantial difference in meaning between "displayed on" versus "displayed by" – *see supra* section III.9.b, from Ans. Br. at 18-20; Zyda Decl. (Dkt. # 65) at ¶ 34 – and there is also a substantial difference between singular and plural in the present context. *See* Zyda Decl. (Dkt. # 65) at ¶ 33. Nothing in Treehouse's Reply Brief changes this. Therefore, the Court should decline to rewrite the claim. *See Rembrandt*, 641 F.3d at 1339-40; *Ultimax*, 587 F.3d at 1353.

61178565_1_Combined CC brief
227942\00046\61178565.v1

LOWE GRAHAM JONES™

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

**10. *Automatically retrieved by said CE network site upon entering said CE network site (JCCPS Term 10)***

  **a.  *Treehouse opening brief (Dkt. #58, p. 28-29)***

Once again, looking at the claim language that provides context, it is clear that the term "automatically retrieved by said CE network site upon entering said CE network site" is not indefinite but a simple clerical error that failed to provide an antecedent basis.

This term is part of claim 23, which depends from claim 22, which in turn depends from claim 21. Claim 21 teaches a method of operating a plurality of character enabled (CE) network sites for a plurality of users that includes a user creating a character with a character profile for use on the plurality of sites (21a), storing the character profile in a database accessible to those sites (21c), and retrieving the profile to display the character on the requested site (21e).

As explained above with the term "causing said character to be displayed on said CE network site on said device of said user" in claim 21(e), the single "said CE network site" referenced in Claim 21(e) is the "one of said plurality of CE network sites" of step 21d. Because claim 23 references "retrieving" described in claim 21(e), claim 23 must also be understood to refer to the "one of said plurality of CE network sites" of step 21d. *See* Sacerdoti Decl., ¶28.

However, even assuming that this is not a clerical error correctable by the Court, this term would be understandable to a reasonable degree of certainty to a person of ordinary skill in the art after reading the specification. The specification clearly describes that CE network sites are capable of automatically retrieving character profiles. "If the user follows a link to another C-E site 16c, the persona data of the character associated with the user may be transferred to the other C-E site. The transfer of persona data may be accomplished by cookie sharing. For example, a string of JavaScript may be written to allow the other character-enabled method site's

JOINT CLAIM BRIEFING - 43
Civil Action No. 2:17-cv-01860-RAJ
61178565_1_Combined CC brief
227942\00046\61178565.v1

LOWE GRAHAM JONES℠

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

16c cookie to recognize the cookie from the first C-E site 16d." (Col. 11:2-4). The execution of Javascript is known in the art to be performed by a network site, not a user, and hence is "automatic." See Sacerdoti Decl., ¶28. Moreover, claim 5 which depends from claim 4, specifies that "the character-persona data is different from the character data and the character-attribute data." This means that, in general, the character-persona data need not be different from the character data and the character-attribute data. Therefore, if a user follows a link to another C-E site, the character profile of the character associated with the user may be automatically retrieved by the other C-E site after the user followed that link. *See* Sacerdoti Decl., ¶28.

Hence, it is reasonably certain from the specification that "automatically retrieved by said CE network site upon entering said CE network site" means "automatically retrieved by said one of said plurality of CE network sites upon the user entering said one of said plurality of CE network sites." *See* Sacerdoti Decl., ¶28.

### b.  *Valve answering brief (Dkt. #63, at pp. 16-17)*

| Phrase | Claim(s) | Treehouse's Proposal | Valve's Proposal |
|---|---|---|---|
| "automatically retrieved by said CE network site upon entering said CE network site" | 23 | "automatically retrieved by one of said plurality of CE network sites upon the user entering said one of said plurality of CE network sites" | Indefinite |

This phrase also indisputably lacks antecedent basis, and Treehouse again tries to diminish the importance of the confusing error by characterizing it as being merely a "clerical error."  Treehouse again asks the Court to rescue the claim, by inserting the phrase "one of said plurality" in two places in the claim phrase, and inserting the phrase "the user" where its absence certainly was not a mere clerical error.

JOINT CLAIM BRIEFING - 44
Civil Action No. 2:17-cv-01860-RAJ

LOWE GRAHAM JONES℠

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

However, here the conspicuously sloppy drafting of claim 23 distracts from an even more fundamental reason for its indefiniteness: the specification of the '858 patent nowhere discloses what is meant by "automatically retrieved … upon entering said CE network site."  Treehouse offers one of many interpretations of that phrase, by inserting "the user," and arguing that a cookie may help retrieve a character profile, but: (1) there are other plausible interpretations such as "upon a character entering," rather than "upon a user entering"; (2) use of a cookie is not necessarily claimed by claim 23, and does not support further limiting the claim with "the user"; and (3) even accepting Treehouse's preferred interpretation, the '858 patent nowhere specifies what is meant by "automatically retrieved … upon entering."  For example, the '858 patent fails to specify what types of retrieval would qualify as "automatic."  *See* Zyda Decl. at ¶ 35.

Therefore, the Court should reject Treehouse's request to re-write claim 23 because Treehouse's proposed correction is not the only plausible one, and fails to correct indefiniteness even if adopted.

### c.  *Treehouse reply brief (Dkt. #66, p. 14-15)*

The singular CE network site of claim 21 is the "one of said plurality of CE network sites" from step 21d. Likewise, the singular "said CE network site" in claim 23 is the same singular "one of said plurality of CE network sites" of claim 21 from which claim 23 depends. Defendant argues that there are other plausible interpretations of the term "automatically retrieved" such as "upon a character entering," rather than "upon a user entering." However, the specification consistently discloses that each selected character is associated with a single user, therefore defendant's proposal has the same meaning, and does not make the term indefinite. (Sacerdoti Reply Decl. ¶ 18). Defendant also argues that use of a cookie is not necessarily

JOINT CLAIM BRIEFING - 45
Civil Action No. 2:17-cv-01860-RAJ
61178565_1_Combined CC brief
227942\00046\61178565.v1

LOWE GRAHAM JONES ᴾᴸᴸᶜ

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

claimed by claim 23, but Treehouse's proposed construction does not include a requirement of using a cookie. This is only one example of automatic retrieval disclosed by the Patent. (*Id*.).

### d.  Valve surreply brief (Dkt. #69, at p. 10)

| Treehouse's Proposal | Valve's Proposal |
|---|---|
| "automatically retrieved by one of said plurality of CE network sites upon the user entering said one of said plurality of CE network sites" | Indefinite |

Treehouse's proposed redrafting of claim 23 offers only one of *many* interpretations of the phrase at issue by inserting "the user" and arguing that a cookie may help retrieve a character profile.  As Valve has already shown (*see supra* III.10.b, from Ans. Br. at 16-17 (Dkt. #63)), however: (1) there are other plausible interpretations such as "upon a character entering," rather than "upon a user entering"; (2) use of a cookie is not necessarily claimed by claim 23 and does not support further limiting the claim with "the user"; and (3) even accepting Treehouse's preferred interpretation, the '858 patent nowhere specifies what is meant by "automatically retrieved … upon entering."  Therefore, the Court should reject Treehouse's request to re-write claim 23 because Treehouse's proposed correction is not the only plausible one, and fails to correct indefiniteness even if adopted.  *See* "accessible to said CE network site" / "causing said character to be displayed on said CE network site on said device of said user" (JCCPS Terms 8 & 9; Claim 21).


LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

1    DATED this 13th day of August, 2018.

2
                    LOWE GRAHAM JONES<sup>PLLC</sup>

3

4
                    */s/Lawrence D. Graham*
                    Lawrence D. Graham, WSBA No. 25402

5
                    *Graham@LoweGrahamJones.com*
                    701 Fifth Avenue, Suite 4800

6
                    Seattle, Washington 98104
                    T: 206.381.3300

7
                    F: 206.381.3301

8
                    *Attorneys for Treehouse Avatar, LLC*

9
                    FOX ROTHSCHILD LLP

10

11
                    */s/Gavin W. Skok*
                    Gavin W. Skok, WSBA No. 29766

12
                    Shata L. Stucky, WSBA No. 39963
                    1001 Fourth Avenue, Suite 4500

13
                    Seattle, Washington 98154-1192
                    T: 206.624.3600

14
                    *gskok@foxrothschild.com*
                    *sstucky@foxrothschild.com*

15
                    BARCELO, HARRISON & WALKER, LLP

16
                    Reynaldo C. Barceló (*admitted pro hac vice*)

17
                    Joshua C. Harrison (*admitted pro hac vice*)
                    2901 West Coast Hwy, Suite 200

18
                    Newport Beach, CA 92663
                    T: 949.340.9736

19
                    *rey@bhiplaw.com*
                    *josh@bhiplaw.com*

20
                    *Attorneys for Valve Corporation*

21

22

23

24
JOINT CLAIM BRIEFING - 47
Civil Action No. 2:17-cv-01860-RAJ
61178565_1_Combined CC brief
227942\00046\61178565.v1

LOWE GRAHAM JONES<sub>PLLC</sub>

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301