UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TREEHOUSE AVATAR LLC,

Plaintiff,

v.

VALVE CORPORATION,

Defendant.

CASE NO. C17-1860-RAJ

**ORDER ON CLAIM CONSTRUCTION**

This matter comes before the Court on the parties' request for claim construction. Dkt. # 139.

## I. BACKGROUND

Plaintiff Treehouse Avatar LLC ("Plaintiff" or "Treehouse") brings suit against Defendant Valve Corporation ("Defendant" or "Valve") for infringing its patent, United States Patent No. 8,180,858 ("the '858 patent"). The '858 patent, issued on May 15, 2012, relates to methods of collecting data from an information network in response to user choices of a plurality of users navigating character-enabled ("CE") network sites on the network. Dkt. # 1-1.

Treehouse initially brought this patent infringement action against Defendant Valve Corporation ("Defendant" or "Valve") in Delaware in 2015. Dkt. # 15. In December 2017, the case was transferred to this District. Dkt. # 116.

The parties initially filed their claim construction briefing in Delaware and disputed thirty terms. *See* Dkt. ## 58, 63, 66, 69. After the case was transferred to this Court, the parties requested, and were granted, leave to file a joint claim construction briefing, consolidating the initial briefing and reducing the number of terms in dispute. Dkt. # 128. The parties now ask the Court to construe ten disputed claim terms. Dkt. # 139.

The court held a *Markman* hearing in this matter on November 8, 2019. Dkt. # 153.

## II. LEGAL STANDARD

Claim construction is a matter of law. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). The specification of a patent begins with a written description, which often includes drawings or illustrations, and "conclude[s] with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor . . . regards as the invention." 35 U.S.C. § 112(b). The claims reign supreme over the remainder of a patent; they alone "define the scope of patent protection." *Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co.*, 285 F.3d 1046, 1052 (Fed. Cir. 2002) ("[A] patent applicant defines his invention in the claims, not in the [remainder of] the specification."); *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1257-58 (Fed. Cir. 1989) ("A claim in a patent provides the metes and bounds of the right which the patent confers on the patentee to exclude others from making, using, or selling the protected invention.").

Although the claims alone define the scope of the invention, construing the claims requires the Court to start with the language of the claims and also to look elsewhere. The Federal Circuit's en banc decision in *Phillips v. AWH Corp.*, 415 F.3d

1303 (Fed. Cir. 2005) provides comprehensive instructions for navigating evidence relevant to claim construction. The court begins with the language of the claims themselves, which "provide substantial guidance as to the meaning of particular claim terms." *Id.* at 1314; *Amgen Inc. v. Hoechst Marion Roussell, Inc.*, 457 F.3d 1293, 1301 (Fed. Cir. 2006) (citing *Phillips* for the proposition that "claim construction must begin with the words of the claims themselves"). The Court should "generally give[] [claim terms] their ordinary and customary meaning" in the eyes of a person of ordinary skill in the art as of the filing date of the patent. *Phillips*, 415 F.3d at 1312-13 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed Cir. 1996)). In some cases, the ordinary meaning "may be readily apparent even to lay judges," in which case the claim construction "involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314.

Beyond the claim language, the remainder of the specification is "always highly relevant to the claim construction analysis." *Id.* at 1315 (quoting *Vitronics*, 90 F.3d at 1582). The specification is dispositive when the inventor uses it to explicitly define a claim term, in which case "the inventor's lexicography governs." *Id.* at 1316. But even where the specification does not explicitly define a term, it may do so implicitly (*Id.* at 1321) and in any event is a "concordance for the claims" (*Id.* at 1315 (citation omitted)) on which the Court should "rely heavily." *Id.* at 1317. At the same time, a court must toe a fine line "between using the specification to interpret the meaning of a claim and importing limitations from the specification into the claim." *Id.* at 1323; *see also SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1340 (Fed. Cir. 2001) (describing "reading a limitation from the written description into the claims" as "one of the cardinal sins of patent law").

The final source of "intrinsic evidence" bearing on claim interpretation is the patent's prosecution history. *Phillips*, 415 F.3d at 1317. The prosecution history begins with the inventor's application to the USPTO and includes all communication

between the inventor and the USPTO, culminating in the USPTO's decision to issue the patent. *Vitronics*, 90 F.3d at 1582. An inventor must often disclaim part of the scope of an invention during prosecution to obtain a patent. Where the prosecution history reflects a "clear and unmistakable disavowal of scope," a court must construe the claims accordingly. *Purdue Pharma L.P. v. Endo Pharms., Inc.*, 438 F.3d 1123, 1136 (Fed. Cir. 2006). The court must recognize, however, that "the prosecution history represents an ongoing negotiation between the PTO and the applicant," and thus "often lacks the clarity of the specification." *Phillips*, 415 F.3d at 1317. It is nonetheless useful for claim construction, although less so than the specification. *Id.*

Extrinsic evidence is always "less significant" and in general "less reliable" than intrinsic evidence. *Id.* at 1318. Unlike intrinsic evidence, extrinsic evidence is not "created at the time of patent prosecution for the purpose of explaining the patent's scope and meaning." *Id.* The court has discretion to use extrinsic evidence in claim construction, but need not do so. *Id.* at 1319. Indeed, where the intrinsic evidence is adequate to define a claim term, "it is improper to rely on extrinsic evidence." *Vitronics*, 90 F.3d at 1583; *Trilogy Commc'ns, Inc. v. Times Fiber Commc'ns, Inc.*, 109 F.3d 739, 744 (Fed. Cir. 1997) ("When . . . district court has concluded that the patent specification and prosecution history adequately elucidate the proper meaning of claims, expert testimony is not necessary and certainly not crucial."

### III. DISCUSSION

A. <u>Disputed Claim Terms</u>

The parties dispute the meaning of ten separate terms in the '858 Patent.

1. "Character"

| Plaintiff's Construction | Defendant's Construction | Court's Construction |
|---|---|---|
| No construction required | "character, object, or scene" | "character, object, or scene" |

The claim term "character" is used in claims 1-4, 6, and 21-23. For example, as used in claim 1 of the '858 patent: "storing a plurality of character data in a database accessible by said CE network site." In the initial claim construction briefing, the parties agreed that the term "character" should be construed as "character, object, or scene." Dkt. # 58 at 5, Dkt. # 63 at 11-12. Treehouse now contends that no construction is necessary. Dkt. # 139 at 8.

Valve argues that construction is necessary because the ordinary meaning of the term "character" is substantially narrower than the meaning within the patent. The intrinsic evidence supports Valve's construction. First, the patent specification clearly expands the definition of "character" to include an "object" or "scene." Dkt. # 1-1 ('858 patent, Col. 1:32-35). In addition, this meaning was adopted by the Patent Trial and Appeal Board ("PTAB") in the now-concluded *Inter Partes Review* proceeding. Dkt. # 62 (Joint Appendix for Claim Construction Briefing), A377 & A380, PTAB Institution Decision, at 8 & 11.

Therefore, "character" is defined as: "character, object, or scene."

### 2. "Character attribute"

| Plaintiff's Construction | Defendant's Construction | Court's Construction |
|---|---|---|
| No construction required | "quality or characteristic inherent or ascribed to a character, object, or scene" | "quality or characteristic inherent or ascribed to a character, object, or scene" |

The term "character attribute" is used in claims 1 and 4. Treehouse argues that "character attribute" does not require construction, for the same reason that the term "character" does not need to be construed. Dkt. # 139 at 10. Valve again argues that construction is necessary because the ordinary meaning of the term is considerably narrower than the meaning in the context of the '858 patent. Dkt. # 139 at 10.

Valve's construction is supported by the specification, as discussed above, and

was also adopted by the PTAB in the *Inter Partes Review* proceeding. JA A377 & A380, PTAB Institution Decision, at 8 & 11. Accordingly, the Court adopts Valve's construction.

The term "character attribute" is defined as: "quality or characteristic inherent or ascribed to a character, object, or scene."

### 3. "Present[ing] … to a/[the] user interface"

| Plaintiff's Construction | Defendant's Construction | Court's Construction |
|---|---|---|
| "providing to a/[the] user interface" | "display[ing] and/or generate[ing] sound on a /[the] user device" | Plain and ordinary meaning controls |

The term "present[ing] … to a/[the] user interface" appears in claims 1 and 4. For example, claim 1 specifies: "presenting to a user interface, one or more character data defining one or more characters." Construction of this term depends on the scope of "presenting." Treehouse argues that "providing" is the appropriate construction because it allows for both "characters/attributes" *and* "data" to be presented to the user. Dkt. # 139 at 11. At the *Markman* hearing, Treehouse later conceded that the term does not require construction. Dkt. # 154 (Markman Hearing Court Transcript) at 2:20-25.

Valve, for its part, seeks to import additional limitations on the scope of the term by replacing "presenting" with "display[ing] and/or generate[ing]\ sound" and replacing "user interface" with "user device." Dkt. # 139 at 12. Valve argues that this construction is necessary because the only way for a user to select a character attribute is to "visually see it or hear an audio presentation of it." Dkt. # 139 at 13.

The Court agrees with Valve that replacing "presenting" with "providing" is unnecessary and potentially confusing. The term "presenting" is used repeatedly throughout the specification, including in the context of presenting data: "[i]n a second aspect, the invention relates to an apparatus for presenting data to a network user based

ORDER - 6

on choices made by the user while within a character-enabled network site." Col. 3:38-40. The claims also refer to presenting both characters or attributes as well as data. As such, it is unnecessary to adopt "providing" in order to clarify that both characters/attributes and data are being presented to the user.

However, the Court also finds no basis to impose the additional limitations described in Valve's proposed construction. A PHOSITA reviewing the claims and specification would understand the scope of the invention without adding Valve's proposed limitations. *Hill-Rom Servs. v. Stryker Corp.*, 755 F.3d 1367, 1374 (Fed. Cir. 2014) ("Claim terms should be given their plain and ordinary meaning to one of skill in the art at the relevant time and cannot be rewritten by the courts to save their validity."). As a result, the plain and ordinary meaning of the term controls.

No claim construction is necessary here.

### 4. "Real-time / Real Time"

| Plaintiff's Construction | Defendant's Construction | Court's Construction |
|---|---|---|
| "without any lag perceived by a user" | Indefinite | "without any lag perceived by a user" |

The term "real time" appears in claims 1, 15, and 18. In claim 1, for example, the patent specifies: "upon selection of a character attribute by the user, presenting in real time to the user interface, the selected character including the selected character attribute . . . ."

Treehouse argues that this term does not require construction, but in the event that the Court determines that the term should be construed, proposes the construction "without any lag perceived by a user." Dkt. # 139 at 17. Valve argues that "real time" is indefinite because a PHOSITA would not understand the outer limits of the term (i.e. how much delay would cause a presentation to be deemed not real time). Dkt. # 139 at 19-20.

A patent is impermissibly indefinite if its claims, read in light of the specification and prosecution history, fail to inform with reasonable certainty, a person skilled in the art as to the scope of the claimed invention. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014). The claim language must be "precise enough to afford clear notice of what is claimed, thereby apprising the public of what is still open to them." *Id.* (internal quotations omitted).

Here, neither the specification nor the patent prosecution history is useful in defining this term. Since the intrinsic evidence does not provide meaningful guidance as to the proper construction of the term, the Court must look to extrinsic evidence. Treehouse points to the dictionary definition which defines "real time" as "the actual time during which something takes place." Dkt. # 139 at 17. According to Treehouse, the meaning of "real time" depends on context, in this case "presenting in real time to the user interface." *Id.* Treehouse's expert notes that in the context of the patent, as long as a user does not perceive any lag in the system's response to the user's activities (e.g., presentation of the shirt style after "rolling over" a brand) a PHOSITA would understand it to be happening in real-time. Dkt. # 139 at 18 (citing Dkt. # 59 (Sacerdoti Decl.) at ¶ 14).

Valve's expert argues that the term is impermissibly indefinite because the "amount of lag that is perceptible to the user is an inconsistent, subjective, and unreliable metric, which depends upon many factors and varies from user to user." Dkt. # 65 (Zyda Decl.) at ¶ 17. For example, Valve notes that in the context of networked virtual worlds or three-dimensional computer games "a graphics update rate of 10 frames per second" would have been considered real-time in 1995 while "20 frames per second would have been required to qualify as 'real time' in 2000."[1] *Id.*

---

[1] At oral argument, Defendants introduced additional supplemental authority which was not included in the briefings. *See HZNP Medicines LLC v. Actavis Labs. UT, Inc.,*

The Court finds that the term "real time" is not indefinite. Valve's suggestion that the patent must describe the precise amount of delay (down to the number of frames per second) in order for the claim to be definite is incorrect. *See Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 899 (2014) ("The standard adopted here mandates clarity, while recognizing that absolute precision is unattainable."). Valve imposes a more demanding standard than is required by law. *Sonix Tech. Co. v. Publications Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017) ("Thus, a patentee need not define his invention with mathematical precision in order to comply with the definiteness requirement.") (citations and internal quotation marks omitted)). Here, a person of ordinary skill in the art would understand that a presentation is in "real time" if the user does not perceive a lag in the display.

Therefore, "real time" is defined as: "without any lag perceived by the user."

### 5. "Tallying…by a plurality of users"

| Plaintiff's Construction | Defendant's Construction | Court's Construction |
|---|---|---|
| "counting or calculating a total number of times the selected character attribute has been selected, aggregated across a plurality of users" | "counting or calculating a total number of times the selected character attribute has been selected by a plurality of users" | "counting or calculating a total number of times the selected character attribute has been selected by a plurality of users" |

The term "[t]allying … by a plurality of users" is used in claims 1 and 15 of the '858 patent. For example, claim 1 specifies: "tallying the number of times the selected character attribute has been selected by a plurality of users." The parties agree on the

---

940 F.3d 680 (Fed. Cir. 2019); *see also* Dkt. # 154 (Markman Hearing Court Transcript) at 8:1-9:15. The Court has reviewed the Federal Circuit's opinion in *HZNP Medicines* and finds it is distinguishable from this case.

ORDER - 9

construction of "tallying" as "counting or calculating a total." Thus, the only dispute relates to "a plurality of users." Treehouse argues that the specification clearly supports replacing "by" with "aggregated across" because the purpose of the invention is to determine "market trends" and "demographics" and this data is not useful unless it is aggregated. Dkt. # 139 at 23.

Valve argues that tallying across a plurality of users could encompass several different options including tallying the number of times a character attribute is selected by two or more users or tallying the number of times a character attribute is selected by two or more users and aggregating the total. Dkt. # 139 at 24. The Court agrees. A person of ordinary skill in the art would understand "tallying . . . by a plurality of users" to include aggregation. But, nothing in the claims or specification expressly limits the scope of the claims to aggregation and the Court will not import this limitation on its own. *Epistar Corp. v. ITC,* 566 F.3d 1321, 1335 (Fed. Cir. 2009) ("[d]isavowal requires expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope."). Accordingly, the Court adopts Valve's construction.

The term "tallying . . . by a plurality of users" is defined as: "counting or calculating a total number of times the selected character attribute has been selected by a plurality of users."

6. **"Character persona data"**

| Plaintiff's Construction | Defendant's Construction | Court's Construction |
|---|---|---|
| "data related to personality of a character derived from the collection of attributes and actions ascribed to a character" | "data indicative of a collection of attributes and actions ascribed to a character" | "data indicative of a collection of attributes and actions ascribed to a character" |

The term "character persona data" is used in claims 4−7 of the patent. For example, claim 5 specifies: "[t]he method of claim 4 wherein the character-persona data is different from the character data and the character-attribute data." At oral argument, the parties agreed to adopt Valve's construction of the term "character personal data." Dkt. # 154 at 10:2-16. This construction is supported by the claim language and specification. Accordingly, the Court adopts Valve's construction.

The term "character persona data" is defined as: "data indicative of a collection of attributes and actions ascribed to a character."

### 7. "Data comprises … presentations"

| Plaintiff's Construction | Defendant's Construction | Court's Construction |
|---|---|---|
| "character-persona data comprises at least one of data defining audio presentations and data defining visual image presentations" | Indefinite | Plain and ordinary meaning controls |

The term "data comprises . . . presentations" is used in claim 6 of the patent. Claim 6 specifies: "[t]he method of character-persona data comprises at least one of audio presentations and visual image presentations." Treehouse argues this term does not require construction, but to the extent the Court believes that it does, Treehouse proposes adding "data defining" to further illustrate that the claim is referring to the underlying data defining the audio and visual presentations. Dkt. # 139 at 34. Valve contends that this term is impermissibly indefinite because Treehouse's proposed construction requires the Court to rewrite the claim by adding in the term "data defining" in two places. Dkt. # 139 at 35.

This term is not indefinite. However, the Court agrees that Treehouse's proposed construction is confusing and unnecessary. Here, a PHOSITA reviewing the claims and specification would understand the scope of the invention without adding Treehouse's proposed limitation. For example, the specification explains that a "character has a plurality of attributes, each defined by at least one of either audio data and/or visual image data. The plurality of attributes collectively defines a character persona." *See* Col. 3:57-63. The specification also refers to audio/visual data and audio/visual presentations interchangeably. For example, "[t]hese site programs operate in conjunction with various stored *audio data/presentations* and *visual image data/presentations* to provide the presentations to the user interface." Col. 4:49-53 (emphasis added). As such, there is no need to add "data defining" to clarify that the claim is referring to the underlying data defining the "audio presentations and visual image presentations." Instead, the ordinary meaning of this term controls.

No claim construction is necessary here.

### 8. "Accessible to said CE network site"

| Plaintiff's Construction | Defendant's Construction | Court's Construction |
|---|---|---|
| "accessible to said plurality of CE network sites" | Indefinite | "accessible to said plurality of CE network sites" |

Terms 8 and 9 are part of the same claim (21) and were briefed together by the parties. Accordingly, the Court will analyze them together below.

//

//

//

//

### 9. "Causing said character to be displayed on said CE network site on said device of said user"

| Plaintiff's Construction | Defendant's Construction | Court's Construction |
| --- | --- | --- |
| "causing said character to be displayed by said one of said plurality of CE network sites on said device of said user" | Indefinite | "causing said character to be displayed by said one of said plurality of CE network sites on said device of said user" |

The terms "accessible to said CE network site" and "causing said character to be displayed on said CE network site on said device of said user" appear in claim 21. For example, claim 21(c) explains: "storing said associating information and said character profile in a database that is accessible to said CE network site." Later, claim 21(e) provides: "if said user has previously created a character profile, retrieving said character profile from said database and causing said character to be displayed on said CE network site on said device of said user . . . ." *Id.* (emphasis added).

Treehouse argues that the terms, as written, contain drafting errors that are easily remedied by making minor adjustments to the disputed terms. Dkt. # 139 at 37-38. According to Treehouse, the claim's preamble illustrates this. *Id.* at 37. The preamble of claim 21 describes: "A method of operating a plurality of character enabled (CE) network sites for a plurality of users . . . ." Treehouse argues that the preamble's reference to a plurality of CE network sites, suggests that the remaining steps of the claim were also intended to refer to a plurality of CE network sites. Dkt. # 139 at 37-38.

Valve objects to Treehouse's characterization, arguing that Treehouse is asking the Court to make "material changes" to the claim, which as currently written is indefinite. Dkt. # 139 at 39-40. First, Valve notes that there is a "substantial difference" between the use of the singular tense and the plural tense in the claims. Dkt. # 139 at 40. For example, claim 21(a) refers to creating a character for use on a

"plurality of CE network sites" while claim 21(d) refers to receiving a request for access to only "one of said plurality of CE network sites." Valve argues that Treehouse is asking the Court to change the term in claim 21(c) from singular to plural, but to change the term in claim 21(e) in such a way that it remains singular. Dkt. # 139 at 40. According to Valve, claim 21(c) could just as easily be changed to "one of said plurality of CE network sites" rather than "said plurality of CE network sites" and the availability of this alternative renders the claim indefinite. *Id.* at 40-41.

"[I]n a patent infringement suit, a district court may correct an obvious error in a patent claim." *CBT Flint Partners, LLC v. Return Path, Inc*., 654 F.3d 1353, 1358 (Fed. Cir. 2011). However, a district court may correct a patent claim only if "(1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims." *Novo Industries, L.P. v. Micro Molds Corp.,* 350 F.3d 1348, 1354 (Fed. Cir. 2003). "District courts may correct 'obvious minor typographical and clerical errors in patents,' but 'major errors are subject only to correction by the PTO.' " *Parallel Networks Licensing, LLC v. Int'l Bus. Machines Corp*., 83 F. Supp. 3d 571, 575 (D. Del. 2015) (quoting *Novo*, 350 F.3d at 1357).

"[A] district court must consider any proposed correction from the point of view of one skilled in the art." *CBT Flint*, 654 F.3d at 1358 (internal quotation marks omitted). "Any correction of a claim has to be consistent with the invention described in the specification and drawings of the original patent." *Id*. at 1359 (internal quotation marks omitted). "[T]he prosecution history should be consulted to ascertain whether there is only a single reasonable construction." *Fargo Electronics, Inc. v. Iris, Ltd., Inc*., 287 Fed. Appx. 96, 101–02 (Fed. Cir. 2008).

Claim 21(c) describes the method of storing the character information in a database accessible to "said CE network site." Treehouse asks the Court to change this to "said plurality of CE network sites" but Valve argues that this could also be

changed to read "one of said plurality of CE network sites." The Court finds Valve's alternative construction unreasonable in light of the claim language and specification. *CBT Flint,* 654 F.3d at 1358 (holding a district court may correct an obvious error in a patent claim where the correction is not subject to reasonable debate based on consideration of the claim language and specification).

Here, the preamble describes a method of operating a "plurality" of CE network sites. Claim 21(a) describes the process of a user creating a character for use on the plurality of CE network sites. Later, claim 21(d) contemplates a user retrieving a previously created character profile from the database after "receiving a request for access to one of a plurality of CE network sites." This inherently requires that the character information in the database be accessible to each of the plurality of CE network sites.

The specification reinforces this interpretation of the claim, describing a method of storing character information in a database (Col. 5:1-3; Col. 9:49-53) that is accessible to multiple CE network sites. *See* Col. 11:39-41 ("In accordance with the present invention, the character created by the user may be retrieved from the central database 24 by the user through other C-E sites."). There is also nothing in the prosecution history to suggest an alternative interpretation. *Fargo Electronics, Inc. v. Iris, Ltd., Inc.*, 287 Fed. Appx. 96, 101–02 (Fed. Cir. 2008). Based on the claim language and specification, a person of ordinary skill in the art would know that "accessible to said CE network site" means "accessible to said plurality of CE network sites." *CBT Flint,* 654 F.3d at 1358 ("a district court must consider any proposed correction 'from the point of view of one skilled in the art.'") (internal citation omitted).

The same is true for the disputed term in claim 21(e). Claim 21(e) describes retrieving the character profile for display on the requested site. The previous step, claim 21(d), describes the process of receiving a request for access to "one of said

ORDER - 15

plurality of CE network sites." So, it follows that the "said CE network site" in claim 21(e) is actually "one of said plurality of CE network sites" as described in claim 21(d). A person of ordinary skill in the art reviewing the claim language and the specification would understand the scope and meaning of the term to be "causing said character to be displayed by said one of said plurality of CE network sites on said device of said user." Accordingly, the Court adopts Treehouse's proposed construction for both terms.

The term "accessible to said CE network site" is defined as: "accessible to said plurality of CE network sites." The term "causing said character to be displayed on said CE network site on said device of said user" is defined as: "causing said character to be displayed by said one of said plurality of CE network sites on said device of said user."

### 10. "Automatically retrieved by said CE network site upon entering said CE network site"

| Plaintiff's Construction | Defendant's Construction | Court's Construction |
| --- | --- | --- |
| "automatically retrieved by said one of said plurality of CE network sites upon the user entering said one of said plurality of CE network sites" | Indefinite | "automatically retrieved by said one of said plurality of CE network sites upon the user entering said one of said plurality of CE network sites" |

The term "automatically retrieved by said CE network site upon entering said CE network site" appears in claim 23. Claim 23 specifies: "the method of claim 22 wherein said character profile is automatically retrieved by said CE network site upon entering said CE network site."

Claim 23 depends on claim 22, which depends on claim 21. As discussed above, claim 21 describes a method of operating a "plurality" of CE network sites. Treehouse argues that the term "said CE network site" in claim 23 should actually read

"one of said plurality of CE network sites" consistent with the preceding claim language and the specification. Dkt. # 139 at 43-44.

Claim 21(e) describes a process of displaying a character on a CE network site. The Court previously held that the single "said CE network site" referenced in claim 21(e) should be construed as "one of said plurality of CE network sites." For the same reason, claim 23, which describes the process of retrieving the character profile that is later displayed in claim 21(e), should also be understood to refer to "one of said plurality of CE network sites."

Valve argues that this term is impermissibly indefinite because the patent fails to disclose what is meant by "automatically retrieved … upon entering said CE network site." Dkt. # 139 at 45. For example, Valve argues that there are alternative interpretations of the term "automatically retrieved" such as "upon a character entering," rather than "upon a user entering." *Id.* In the context of the claims and specification, however, the Court finds this a distinction without a difference. The specification repeatedly discloses that a selected character is associated with a single user. As such, Valve's proposed construction does not alter the scope and meaning of the term. *CBT Flint*, 654 F.3d at 1359 (holding district court had authority to correct claim where claim had same scope and meaning under alternative meanings). Accordingly, the Court adopts Treehouse's construction.

The term "automatically retrieved by said CE network site upon entering said CE network site" is defined as: "automatically retrieved by said one of said plurality of CE network sites upon the user entering said one of said plurality of CE network sites."

## IV. CONCLUSION

For the reasons stated above, the Court adopts the above constructions set forth in this opinion for the disputed terms of the '858 patent. The parties are ordered that

they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury.

Dated this 25th day of November, 2019.

The Honorable Richard A. Jones
United States District Judge