# Exhibit 2

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TREEHOUSE AVATAR LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>VALVE CORPORATION,<br><br>*Defendant*. | Civil Action No. 2:2017-cv-01860 |

# INVALIDITY EXPERT REPORT OF DR. MICHAEL ZYDA REGARDING UNITED STATES PATENT NO. 8,180,858

| automatically retrieved by said CE network site upon entering said CE network site (claim 23) | automatically retrieved by said one of said plurality of CE network sites upon the user entering said one of said plurality of CE network sites D.I. 155, p. 16. |
|---|---|

### D. Discussion of Certain Claim Terms

128. The following discussion of certain claims terms may not specifically appear in the discussion of each prior art reference in this Report and in the accompanying claim charts, but should be considered part of those analyses. This discussion is not intended to, and does not, alter the construction of any of the above claim terms.

#### 1. Data

129. The claim term "data" and the claim phrase "plurality of … data" appear repeatedly in the asserted claims. For example, claim 1 recites "storing a plurality of character data" and "storing a plurality of character-attribute data." The word data is the plural of the word datum. Therefore, claim language that recites a "plurality" of data is largely redundant. In any event, claim language that calls for, for example, "a plurality of character data," such as recited in claim 1, would be satisfied by the simplest of characters.

130. For example, the image of a stick figure character, or even a word that represents a character, would comprise a plurality of character data. This is because a plurality of data would be required to define the stick figure image (such as data about the length and position of the arms, legs, and/or torso, and/or the color of the stick figure). Even a single letter of a word is composed of a plurality of data. Under the ASCII character encoding standard, a character, such as a letter of the alphabet, is represented by a two-position HEX string or a binary string. Thus, under ASCII, just a single character is comprised of a plurality of data. Even under Morse code,

56

145. My own publications from before 2000 contain multiple examples of databases in the context of networked systems, such as network-based computer games. Those publications are consistent with my observations here and with the use of the term "database" in the '858 Patent. For example, in 1997, when I chaired the National Research Council Committee on Modeling and Simulation: Opportunities for Collaboration Between the Defense and Entertainment Research Communities, the Committee published a report entitled "Modeling and Simulation: Linking Entertainment & Defense," (Exhibit 017) published by National Academy Press, on which I served as an editor and co-author. One of the topics discussed in the report was "[d]atabase generation and manipulation," which discussed the "managing and storing [of] information" as well as the "rapid retrieval of information" for use in creating simulated environments. I similarly discussed "[d]atabase generation and manipulation," in the "Games on the 'Net!" book chapter, mentioned previously in this Report (Exhibit 018). That discussion also concerned "managing and storing information" for the "rapid retrieval of information" in a networked simulated environment.

### 3. Character-enabled network site[s]

146. As recited in the table above, the agreed-upon construction for the claim phrase "character-enabled network site" is "a network location, other than a user device, operating under control of a site program to present a character, object, or scene to a user interface." The '858 Patent (Exhibit 003) states that Figure 1, reproduced below, depicts "an information network including a user side 10 and a network-site side 12 interfacing through a network 14. The network 14 provides the means through which a user may access a plurality of network sites 16a, 16b and character-enabled network sites ('C-E sites') 16c, 16d." (*Id.*, at col. 6, lines 28-33).



147.   The '858 Patent further explains that the "server 22b houses a program memory 28 for storing the network-site software programs, i.e., 'site programs', which operate each of the C-E sites 16c, 16d in accordance with the invention." (*Id.*, at col. 6, lines 59-62). As shown in Figure 1, two (i.e. a plurality of) character-enabled network sites 16c and 16d are accessed via a single server 22b. The '858 Patent also notes that "[w]hile FIG. 1 depicts only one server 22b with two associated C-E sites, 16c, 16d, the information network may include any number of these items." (*Id.*, at col. 6, line 66 – col. 7, line 1). From these and other disclosures in the '858 Patent, a POSITA would have understood that: (1) "server" and "character-enabled network site" are not interchangeable terms in the '858 Patent; (2) there need not be a one-for-one ratio between servers and character-enabled network sites; and (3) a plurality of character-enabled network sites does not require a plurality of servers.

    **4.**    **Real time**

148.   A POSITA would have known, as of July 12, 2000, that for user-interactive applications, such as computer games or other networked applications, it was desirable for the user not to experience lag or delay because it was well known that lag diminished the user

64

224. The Kusumoto Patent relates to adding advertising to users' avatars in networked environments, where the advertising can be chosen by the users. The abstract of the Kusumoto Patent states in part:

> Participants in a virtual world in an interactive [] environment [] are recruited to advertise products and brands to the other participants [] in the virtual world. Each user entering the virtual world may select from a set of available advertisements, which can be displayed in association with the user's avatar [] in the virtual world. Users are incentivized to do this by the availability of rewards, such as coupons, real or virtual money or other resources, which are provided by the advertising sponsors, based on adoption of the advertising by the user, as well as on factors such as exposure of the selected advertisements to other users in the virtual world. Allowing the consumer to exercise advertising choice, this embodiment also facilitates collection of data regarding consumer preferences

225. The Kusumoto Patent discusses many concepts relevant to the Asserted Claims of the '858 Patent that were well known in the art before the filing date of the Kusumoto Provisional.[17] For example, the Kusumoto Patent discusses then-known online networked environments where the users participated through their characters or avatars:

> The most engaging forms of online interactive entertainment immerse participants in a virtual world, which closely reflects the real world in some respects, but which in other respects dramatically and selectively amplifies real-world experience. To personalize the user's experience, the concept of "self" must be carried into the virtual environment as well. It is common in such forms of entertainment for each participant to be provided with an "avatar" that represents how the participant's "self" is manifested in the virtual world.

---

[17] *See also* Exhibit 030 (Declaration of Laura Lee Kusumoto). I considered that Declaration, and while it constitutes the type of materials upon which experts with respect to the field of the '858 Patent would reasonably rely, my opinions herein are not dependent upon on the Declaration, but that Declaration is cited herein as additional independent support for my opinions.

accommodate all the people who want to spend time in Meridian 59, 3DO has multiple servers running the game at any given time. [] Each server … can accommodate several thousand citizens.").

236. 3DO released updates to Meridian 59, some of which were given marketing titles, such as "Meridian 59: Revelation," released in 1997. However, these were not distinct or different versions of the game. As updates were released, the Meridian 59 servers operated by 3DO were updated. Users then were prompted to install updated Meridian 59 clients on their computers. If a user's Meridian 59 client was out of date, the user was required to update the client before being allowed to connect to a Meridian 59 server and play the game.

237. The evidence concerning Meridian 59 that I considered in arriving at my opinions herein include, but are not limited to: an original Meridian 59 CD-ROM from 1996; an original Meridian 59:Revelation CD-ROM from 1997; a Meridian 59 manual (Exhibit 035); a Meridian 59:Revelation manual (Exhibit 036); the installations of Meridian 59 and Meridian 59:Revelation clients from their respective CD-ROMs;[18] the electronic help files that accompany those client installations; the playable version of Meridian 59 available on Steam; the Meridian 59 Documentation document written by Andrew and Christopher Kirmse, dated September 30, 1997, which describes the operations of Meridian 59 and its "BlakSton" game system (Exhibit 034); Meridian 59 source code from February 1997 (KOD0203.ZIP) (Exhibits 039 and 048) (VALVE_TH_0028200); U.S. Copyright Office Certificates of Registration and certified copies of deposited portions of source code concerning Meridian 59 (Exhibits 037-038) (VALVE_TH_0014717-0014772); discussions with Andrew Kirmse; and a declaration by

---

[18] These clients will no longer connect to a Meridian 59 server because the 3DO-operated Meridian 59 servers to which they are designed to connect have been decommissioned.

Andrew Kirmse concerning Meridian 59 and related topics (Exhibit 040). The physical items described in this paragraph are available for inspection.

238. I have been asked to assume that Meridian 59 is prior art to the '858 Patent. I agree that Meridian 59 was known and in use in the United States prior to the invention date of the '858 Patent of July 12, 2000, and contained the features and functionality that I rely upon in arriving at my opinions herein. Meridian 59 was sold in the United States, including in retail packaging with the game software on a CD-ROM. I have examined the "date modified" of all files on an original Meridian 59 CD-ROM, and each file has a date modified of September 1996 or earlier. I have also examined the "date modified" of all files on an original Meridian 59:Revelation CD-ROM, and each file has a date modified of September 1997 or earlier. The Meridian 59:Revelation CD-ROM I have examined lists copyright dates of 1996 and 1997 on the printed face of the disc. The Meridian 59 manual I have examined lists a copyright date of 1996. The Meridian 59:Revelation packaging and included manual I have examined also each list copyright dates of 1996 and 1997. The Meridian 59 manual specifies that the game was compatible with Microsoft Windows 95 or Windows NT 3.51, but does not list the later-released Windows 98 or Windows NT 4. I have also reviewed several gaming magazines published in 1996 and 1997 that contain reviews, advertisements, and/or other descriptions of Meridian 59.[19] I have also reviewed documents dated 1996 relating to Meridian 59 source code that was deposited with the U.S. Copyright Office in 1997 (Exhibits 037-038). I also have discussed some of these and other dates with one of the Meridian 59 developers, Andrew Kirmse, who confirmed dates of invention, use, and sale in the United States that establish Meridian 59 is prior art to the '858 Patent. The physical items described in this section are available for inspection.

---

[19] These include Computer Gaming World, July 1996 (Exhibit 059), PC Games, January 1997 (Exhibit 060), Next Generation, November 1996 (Exhibit 061). See VALVE_TH_0028303.

continue my analysis in connection with this matter. In addition, I expect to continue my analysis and evaluation of the relevant prior art. Accordingly, I expressly reserve the right to continue this investigation, and I may supplement, modify, or amend my opinions and conclusions as well as the bases supporting my opinions as my investigation continues. I also reserve the right to supplement my opinions in response to any additional material or information made available to me, including opinions provided by Treehouse or its experts, or any other opinions or reports provided to me. I also reserve the right to provide my testimony in an alternative format, including through the preparation of charts, graphics, demonstratives, etc., and specifically, demonstrations, either live or prerecorded, of the video games referenced in this Report, to further illustrate my testimony. I expect to present my opinions contained in this Report using such alternative formats at trial.

335.   The citations provided in this Report (including the accompanying Charts) are exemplary, and I reserve the right to rely on any other portions of the identified prior art or document, or any other available document or information, that may help better explain my opinions or rebut any other opinions. I also may testify on issues within my area of expertise that provide the basis for, or better explain my opinions, to better assist the Court or jury. To the extent additional issues are raised at deposition or trial, or in an effort to challenge these opinions, I may also testify on additional topics within my area of expertise to further explain my opinions or rebut any evidence or testimony offered as contrary to my opinions.

Executed on: December 4, 2020, at Los Angeles, California, USA

_____
Dr. Michael Zyda