HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TREEHOUSE AVATAR LLC,

        Plaintiff,

v.

VALVE CORPORATION, a Washington Corporation,

        Defendant.

No. 2:17-cv-01860-RAJ

ORDER

## I. INTRODUCTION

This matter comes before the Court on Plaintiff's Motion to Compel. Dkt. # 177. Defendant opposes this motion. Dkt. # 179. For the reasons below, the motion is **DENIED**.

## II. BACKGROUND

On May 27, 2015, Plaintiff Treehouse Avatar LLC ("Plaintiff" or "Treehouse") filed a complaint in the United States District Court for the District of Delaware against Defendant Valve Corporation ("Defendant" or "Valve") alleging patent infringement of

ORDER – 1

U.S. Patent No. 8,180,858 ("the '858 patent"). Dkt. # 1. The '858 patent, entitled "Method And System For Presenting Data Over A Network Based On Network User Choices And Collecting Real-Time Data Related To Said Choices," was issued on May 15, 2012. *Id.* ¶ 7. The patent is assigned to Plaintiff by an assignment filed at the United States Patent and Trademark Office ("USPTO"). *Id.* On December 12, 2017, the case was transferred to this Court. *See* Dkt. # 115-116.

On March 5, 2020, Plaintiff served a notice of deposition to Defendant specifying 32 topics of inquiry for the deposition, including the following six topics:

1. The direct costs paid by Valve in connection with the revenue it earns from transactions for the sale of items on the Steam Community Marketplace;

2. The direct costs paid by Valve in connection with the revenue it earns from transactions for the sale of items on the Steam client by visiting www.steampowered.com, through a competing platform or from other distributors or retailers;

3. The direct costs paid by Valve in connection with the revenue it earns from transactions for the sale of items in-game;

4. The total money paid by Valve for the design of cosmetic items sold by Valve in connection with the Accused Games, either on the Steam client, in-game stores, or in the Steam Community Marketplace;

5. The costs incurred to develop each of the Accused Games and the time-frame within which the Accused Games were developed; and

6. The costs incurred to maintain each of the Accused Games and the kinds of activities required to maintain the Accused Games.

Dkt. # 177 at 1-3.

Defendant objected to providing a witness to address the six topics listed based on the 2016 "Financial Discovery Agreement" between Defendant's counsel and Plaintiff's prior counsel, under which Plaintiff agreed to forgo any further discovery into financial matters, according to Defendant. *Id.* at 3. Despite efforts to resolve the matter through discussion and email exchanges, the parties could not come to an agreement on the six

ORDER – 2

topics at issue. *Id.* Months later, Plaintiff filed the pending motion to compel Defendant to produce a witness pursuant to rule 30(b)(6) knowledgeable about the financial topics at issue. *Id.* at 1.

### III.  DISCUSSION

In its motion, Plaintiff argues that the proposed topics for deposition are described with reasonable particularity and are both relevant and proportional to the needs of the case. *Id.* at 5. Plaintiff asserts that the Financial Discovery Agreement was related to written discovery, not depositions. *Id.* at 7. As such, Plaintiff contends that this deposition, which includes the six topics, is permissible and Defendant should be compelled to produce a witness who can address these matters. *Id.* Plaintiff also requests reasonable attorney's fees in connection with the motion and any additional deposition of Defendant's Rule 30(b)(6) designee obtained through the motion. *Id.* at 11.

In response, Defendant argues that Plaintiff is attempting to walk back the agreement its prior counsel had reached in 2016 with Defendant's counsel over the limitations in the scope of financial discovery. Dkt. # 179 at 2. Defendant explains that, as a private company with no external shareholders, lenders, or investors, it does not produce the kind of financial documents and reports that many other businesses do. *Id.* When Plaintiff requested such financial documents in discovery, Defendant objected that the Federal Rules of Civil Procedure did not require it to do such work. *Id.* The parties resolved the dispute in 2016 by agreeing that "Treehouse would provide Valve with a list of financial data important to Treehouse, then Valve would query its databases for the agreed information and create special customized reports for Treehouse, organizing that information by game, by month, by location, and by sales channel, as requested by Treehouse." *Id.* Defendant alleges that in exchange for its agreement to produce this information, which it claims "went well beyond what Valve was required to do under the Rules," Plaintiff agreed it would take no additional financial discovery from Valve. *Id.*

Defendant explained that the parties operated under the agreement for four years

ORDER – 3

as they completed written discovery and document production. *Id.* Defendant noted that it searched and compiled information from millions of transactions into a spreadsheet, which it updated multiple times, to provide the agreed upon information. *Id.* On October 29, 2020, Defendant produced a Rule 30(b)(6) deposition designee to testify about the information in the reports. *Id.*

Defendant argues that Plaintiff's current counsel "now seeks to avoid the parties' prior agreement" by trying "to obtain the same cost information from Valve that Treehouse agreed in 2016 would not be part of discovery." *Id.* at 3. Specifically, the six topics at issue in Plaintiff's Rule 30(b)(6) notice involve the same type of cost information that Plaintiff agreed to no longer pursue in exchange for Defendant's creation of the spreadsheet reports. *Id.* at 7. Defendant alleges that attempting to compile the type of information requested would be a "massive undertaking requiring hundreds of hours of work by Valve, as well as numerous arbitrary decisions and the application of hypothetical cost allocation rules that Valve does not have or use, with a resulting output that would not represent the actual cost of sales." *Id.* at 8. Thus, Defendant contends that, in addition to being outside the agreed-upon scope of financial information, Plaintiff's request would impose an unreasonable burden on Defendant by seeking information that Defendant does not keep in the ordinary course of business.

Under Federal Rule of Civil Procedure 37(a)(3), a party may move to compel disclosure if another party fails to make a disclosure required by Rule 26(a). Fed. R. Civ. P. 37(a)(3)(A). A party may obtain discovery regarding any nonprivileged matter that is relevant to a claim and proportional to the needs of the case, considering, among other things, whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b). A party may obtain a deposition under Rule 30(b)(6):

> [A] party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must designate one or more officers, directors, or managing agents, or designate other

ORDER – 4

> persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify . . . The persons designated must testify about information known or reasonably available to the organization.

Fed. R. Civ. P. 30(b)(6).

The Court finds that Plaintiff's request for financial information does not adhere to the parties' prior agreement to limit disclosure of financial information based on a compromise between Plaintiff's need for financial information and Defendant's ability to provide such information without undue burden. In the parties' 2016 email exchange negotiating the agreement, Plaintiff's attorney Peter Fratangelo indicated that Plaintiff "has and continues to be willing to work with Valve to reach an agreement that provides Treehouse with the information it requires and is entitled to while minimizing any disruption to Valve." Dkt. # 180-5 at 3. After several email communications on Defendant's proposed discovery agreement, Plaintiff's counsel confirmed its position accordingly:

> As we have stated, we believe that if Valve produces the information in your proposal in good faith, it will satisfy Treehouses need for financial information, and unless Valve has some unique accounting practices that in effect books significant revenues or information that would normally be expected to be captured by your proposed report in some other category, effectively not disclosing that information to Treehouse*, we will not seek further financial information related to the 6 games* as outlined in your proposal.

*Id.* (emphasis added).

There is no evidence or allegations that Defendant did not produce the information as agreed upon in good faith. In fact, Plaintiff confirms that, in March 2020, "Valve supplemented its financial disclosures and largely eliminated any dispute regarding whether Valve's report complied with the Financial Discovery Agreement." Dkt. # 177 at 3. The Court finds that Defendant met its obligation to produce the requested financial information and Plaintiff, in turn, agreed not to "seek further financial information related to the 6 games" pursuant to their 2016 agreement. Dkt. # 180-5 at 3.

Now, several years later and with new counsel, Plaintiff seeks to obtain the

ORDER – 5

financial information that its prior counsel explicitly agreed not to request. Plaintiff's current counsel argues that the Financial Discovery Agreement "was never meant to foreclose deposition testimony on any financial matters." Dkt. # 177 at 4. This argument is unpersuasive. In 2016, the parties agreed on the financial information—the content— that was discoverable, not the mode of delivery. Plaintiff's argument that they can now obtain the very information that was excluded under the Financial Discovery Agreement through a different mode is contrary to the intentions of the parties at the time the agreement was made. While the parties referred to financial documents through the emails, they did not limit the agreement to written discovery. Indeed, the agreement would be useless if Defendant were still required to provide the financial information at issue through depositions.

The Court also finds that the parties' agreement to limit financial discovery in this manner reflects the challenges and significant burden faced by Defendant in providing the financial information requested. As a private company with no lenders or shareholders, Defendant is not subject to public regulatory reporting and auditing requirements. Dkt. # 181 at 3. As such, Defendant notes that it does not prepare financial reports, such as profit and loss statements or similar financial statement on a product-by-product basis on a regular basis. *Id.* To provide the financial information requested by Plaintiff in 2016 and updates, Defendant states that it had to "identify, collect, and compile a variety of information from millions of transactions around the world from multiple, distinct sources, and then manually combine that information into the spreadsheets for production to Treehouse." *Id.* at 4. Defendant's employees spent over 100 hours preparing the financial spreadsheets and subsequent updates to them, as agreed in the Financial Discovery Agreement. *Id.*

The Court finds that Plaintiff's request for additional financial information, which falls outside the scope of the Financial Discovery Agreement, is a significant burden that outweighs its likely benefit. The Court, therefore, denies Plaintiff's motion to compel.

ORDER – 6

## IV. CONCLUSION

Based on the foregoing reasons, the Court **DENIES** Plaintiff's motion to compel. Dkt. # 177. Plaintiff's request for attorney's fees and other fees related to the deposition are **DENIED** as moot.

DATED this 24th day of September, 2021.

*/s/ Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge

ORDER – 7